**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 00-10418

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

versus

ALVESTER FORT,
*Defendant-Appellant*

Appeal from the United States District Court for the
Northern District of Texas

April 17, 2001

Before FARRIS,[*] JOLLY, and DAVIS, Circuit Judges.

FARRIS, Circuit Judge:

This is an appeal from a conviction and sentence imposed following Alvester

Fort's guilty plea to a one-count indictment charging him with possession with intent

to distribute approximately 561.2 pounds of marijuana, in violation of 21 U.S.C. §

841(a)(1).

Fort's conviction arose from the stop of his commercial truck by a Texas

---

[*]Circuit Judge of the Ninth Circuit, sitting by designation.

Department of Public Safety officer, Mike Scales. Fort filed a motion to suppress all evidence obtained as a result of this stop and the subsequent seizure of his truck. The district court denied the motion. *See United States v. Fort*, 81 F. Supp 2d. 694 (N.D. Tex. 2000). Fort then entered a conditional guilty plea pursuant to a plea agreement, expressly reserving the right to appeal the denial of the motion to suppress.

The parties stipulated that Officer Scales "stopped the truck to conduct a routine commercial inspection." Testimony that might have provided probable cause for the stop was stricken, and the right to argue those facts was specifically waived at the suppression hearing.

Scales' safety inspection revealed violations. Further, as Scales was conducting the safety inspection, he ran a license and wanted persons check on Fort, the driver. It revealed that the State of Louisiana had issued a warrant for Fort's arrest because of a parole violation. The underlying offense for the Louisiana warrant was possession of marijuana with intent to deliver. Further, the search of the truck was with Fort's consent.

The threshold question is whether the statute provided a basis for the warrantless stop, thereby justifying denial of the motion to suppress. Fort raises two additional issues: one that concerns the suppression denial and one that

involves the constitutionality of 21 U.S.C. § 841 in light of *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000). We affirm.

STANDARDS OF REVIEW

In considering a district court's ruling on a motion to suppress, questions of law are reviewed de novo and factual findings are reviewed for clear error. *See United States v. Richard*, 994 F.2d 244, 247 (5th Cir. 1993). Issues that are not raised in the district court are reviewed for plain error. *See United States v. Knowles*, 29 F.3d 947, 950-51 (5th Cir. 1994).

**I. Statutory Authority for the Stop**

Fort contends that the district court erroneously determined that the officer's stop of his truck was justified as a regulatory seizure. He argues that the Texas statutes the district court relied upon do not authorize the stop of a moving vehicle without probable cause or reasonable suspicion.

The district court relied on *United States v. Burch*, 153 F.3d 1140 (10th Cir. 1998), to provide the framework for considering Fort's argument that the warrantless stop violated his Fourth Amendment rights. In *Burch*, the Tenth Circuit analyzed a stop and concluded that the officer's action was justified at its inception

-3-

pursuant to the regulatory exception to the Fourth Amendment's warrant requirement announced in *New York v. Burger*, 482 U.S. 691, 702-03 (1987). *See Burch*, 153 F.3d at 1141-42.[1] In the instant case, the district court concluded that the stop of Fort's truck was justified as a regulatory seizure, relying on Tex. Transp. Code Ann. § 644.103(a), which provides that an officer "may enter or detain on a highway or at a port of entry a motor vehicle that is subject to this chapter," and § 644.104(a)(1), which authorizes officers to enter a motor carrier's premises to inspect real property, including a building, or equipment.

Fort contends that the statutory authority under section 644.103 to detain a vehicle does not confer authority to stop it in the first place.[2] The government responds that the term "detain" under section 644.103 includes the authority to stop a vehicle, relying on a definition from a previous edition of Black's Law Dictionary 535 (4th ed. 1951), and on the rule that words are to be construed according to common usage and common sense, *see* Tex. Govt. Code Ann. § 311.011.

---

[1]     In contrast to the instant case, the defendant in *Burch* did not dispute that the stop and search of his truck pursuant to Kansas statutory authority were valid under the regulatory exception. *See Burch*, 153 F.3d at 1142.

[2]     Fort also contends that the district court's reliance on Tex. Transp. Code Ann. § 644.104(a)(1) was misplaced because that statute does not refer to vehicle stops or detentions.

The interpretation of the Texas statutes relied upon by the district court is an issue of first impression. Neither the state courts nor the Fifth Circuit have addressed whether either statute provides authority for an officer to stop a vehicle in the absence of probable cause or reasonable suspicion. The only Texas case that has addressed section 644.103 involved a stop for which the officer had probable cause. *See $217,590.00 In United States Currency v. State*, 970 S.W.2d 660, 664-65 (Tex. App. 1998) (en banc), *rev'd on other grounds*, 18 S.W.3d 631 (Tex. 2000). The court therefore relied upon section 644.103 solely to support the officer's subsequent detention and inspection of the vehicle. *See id*. at 665.

If section 644.103 had simply provided "stop" and "detain," its intent would be clear. Instead, we must determine whether "stop" is interchangeable with "detain," so as to render section 644.103 sufficient statutory authority for a vehicle stop. We hold that under the circumstances it must be considered so. It is impossible to "detain" a moving vehicle, as Fort's truck clearly was, unless the vehicle is first brought to a stop. We therefore conclude that the district court did not err by ruling that sections 644.103 and 644.104 authorized the stop.[3]

---

[3]     We reject Fort's contention that sections 644.103 and 644.104 authorize inspections only of vehicles registered in Texas. It is true that Chapter 644 refers to section 548.001(1) for the definition of "commercial motor vehicle,"

(continued...)

Because we agree with the district court that the Texas statutes provided authority to stop the truck, we must now determine whether the warrantless stop and inspection of the truck were permitted under the regulatory exception to the warrant requirement announced in *New York v. Burger*, 482 U.S. 691 (1987).

## II. The statutes satisfy the requirements of *Burger*

The district court concluded that the stop and inspection were permissible under *Burger*'s warrant exception for closely or pervasively regulated industries. *See Burger*, 482 U.S. at 702-03; *cf. United States v. Hernandez*, 901 F.2d 1217, 1221 n.4 (5th Cir. 1990) (noting that the state may regulate commercial trucking).

Fort contends, however, that *Delaware v. Prouse*, 440 U.S. 648 (1979) is the controlling authority, rather than *Burger*. *Prouse* held that random stops of vehicles involving officers' unconstrained exercise of discretion to check driver's licenses in the absence of articulable suspicion violated the Fourth Amendment. *See id.* at 662-

---

[3](...continued)
*see* Tex. Transp. Code Ann. 644.001(1), and that Chapter 548 requires inspection of all vehicles registered in Texas, *see* Tex. Transp. Code Ann. §§ 548.051, 548.201. Section 548.001(1), however, does not limit the definition of "commercial motor vehicle" to those registered in Texas. Because Fort has failed to point out any explicit limitation on the types of vehicles that are subject to Chapter 644, we conclude that the limitation on inspections provided in Chapter 548 is inapplicable to Chapter 644.

63.  Fort contends that the random stop of his truck was based upon the unfettered discretion of the officer, and argues that if the Texas statutory scheme confers such discretion, then it does not satisfy the test for warrantless regulatory searches under *Burger*, 482 U.S. at 702-03.  We agree with the government that *Prouse* itself recognized an exception based upon regulatory inspections.  *See Prouse*, 440 U.S. at 663 n.26 (noting that its holding did not cast doubt on permissibility of truck weigh-in stations and checkpoints).[4]  We conclude therefore that the *Burger* analysis is applicable to the stop and inspection of Fort's truck.

A warrantless inspection of a pervasively regulated business is valid under *Burger* if:  1) there is a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made; 2) the inspection is necessary to further the regulatory scheme; and 3) the statutory or regulatory scheme provides a constitutionally adequate substitute for a warrant.  *See Burger*, 482 U.S. at 702-03.

---

[4]      In *City of Indianapolis v. Edmond*, 121 S. Ct.  447 (2000), the Supreme Court again recognized the regulatory exception of *Burger* as permitting searches for administrative purposes without particularized suspicion of misconduct. *See id.* at 452.  Although a regulatory scheme with a primary purpose of general crime control might not pass constitutional muster under *Edmond*, *see id.* at 454, there is no allegation in the instant case that the Texas statutory scheme's purpose was to uncover evidence of ordinary criminal wrongdoing.

A. Prerequisite to Application of *Burger*: Trucking is pervasively regulated.

Fort initially contends that commercial trucking is not a pervasively regulated industry. Although we have not previously addressed this issue, three of our sister circuits have concluded that *Burger* does apply to the commercial trucking industry. *See United States v. Burch*, 153 F.3d 1140, 1141-42 (10th Cir. 1998) (applying *Burger* test to stop of a semi-tractor/trailer rig); *V-1 Oil Co. v. Means*, 94 F.3d 1420, 1426-28 (10th Cir. 1996) (analyzing random safety inspection of a commercial vehicle under *Burger*); *United States v. V-1 Oil Co.*, 63 F.3d 909, 911 (9th Cir. 1995) (applying the *Burger* test to inspection of a facility because its trucks hauled hazardous materials); *United States v. Dominguez-Prieto*, 923 F.2d 464, 468 (6th Cir. 1991) (concluding that commercial trucking is a pervasively regulated industry).

Because commercial trucking is governed by extensive federal and state regulations, the district court correctly concluded that *Burger* was applicable. *See Dominguez-Prieto*, 923 F.2d at 468; *Hernandez*, 901 F.2d at 1221 n.4.

B. 1st Prong: There is a substantial government interest.

The district court correctly concluded that the state has a substantial interest in traveler safety and in reducing taxpayer costs that stem from personal injuries and

-8-

property damage caused by commercial motor carriers. *Cf. Dominguez-Prieto*, 923 F.2d at 468 (concluding that the safe operation of large commercial vehicles satisfies the "substantial interest" prong).

C.  2d Prong: Warrantless stop and inspection are necessary.

Fort contends that unfettered discretion of officers to stop commercial vehicles is not necessary to promote the State's interest in traveler safety through the regulation of commercial vehicles.  As it has been framed, the issue is not whether warrantless inspections are necessary to further the statutory scheme, but taking one step back, whether unfettered discretion in deciding to make the stop in order to perform the inspection is necessary.   We reject Fort's importation of the *Prouse* standard into the *Burger* analysis.  The district court concluded that warrantless stops and inspections are necessary under *Burger* because Texas must be able to conduct driver and vehicle safety inspections for problems that may not be apparent to officers on patrol.  *See Burger*, 482 U.S. at 702-03.  We concur with the district court.

Texas undoubtedly has a strong interest in promoting safety and compliance with both federal and state regulations and statutes governing commercial vehicles. *See* Tex. Transp. Code Ann. §§ 644.051(c), (d) (allowing the director to adopt all or

part of the federal safety regulations and to adopt rules that ensure, *inter alia,* that commercial motor vehicles are "safely maintained, equipped, loaded, and operated" and that the physical condition of the commercial vehicle's driver enables the safe operation of the vehicle); *see also* 49 U.S.C. §§ 31131(a), (b) (indicating that safety regulations concerning commercial vehicles are necessary to promote the safe operation of commercial motor vehicles and to enhance commercial vehicle safety to reduce highway fatalities, injuries and property damage). We agree with the government that random stops are one means to promote Texas's interest in commercial vehicle safety.

Commercial trucks pass quickly through states and out of the jurisdictions of the enforcement agencies. *See Dominguez-Prieto*, 923 F.2d at 469.[5] Because of the transitory nature of the commercial trucking industry, we conclude that the need for warrantless stops and inspections is even more compelling than the warrantless inspections of automobile junkyards upheld in *Burger. See id.* (recognizing that if the state is to be successful in regulating common carriers in the trucking industry

---

[5] We recognize that *Dominguez-Prieto* did not involve a completely random stop, but rather that the statute required the stop to be based on a reasonable belief that the vehicle was being operated in violation of the regulatory scheme. *See Dominguez-Prieto*, 923 F.2d at 466. We do not, however, find this distinction compelling in light of our conclusion that the Texas statutes authorized the stop in the instant case in order to inspect for safety violations.

and the types of cargo they transport, the state must be able to inspect trucks and cargo frequently); *see also V-1 Oil Co.*, 94 F.3d at 1426 (noting that random safety inspections may be necessary because drivers can avoid both fixed and temporary checkpoints).

We reject Fort's contention that *Prouse* forbids random, suspicionless stops and inspections of commercial trucks. The concerns that informed the analysis in *Prouse* have less applicability in the context of statutory or regulatory inspections in the pervasively regulated industry of commercial trucking. In *Prouse*, the Supreme Court focused on the need to balance the intrusion on an individual's Fourth Amendment privacy interests against the promotion of legitimate government interests, in reaching its conclusion that unconstrained exercises of discretion to spot-check vehicles and drivers was impermissible. *See Prouse*, 440 U.S. at 654, 661-63. In contrast, both the Supreme Court and this court have recognized a reduced expectation of privacy for regulated industries, and, thus, the Fourth Amendment standard of reasonableness for a government search has lessened application in this context. *See Burger*, 482 U.S. at 702; *Hernandez,* 901 F.2d at 1221 n.4 (noting that because the state may regulate commercial trucking, the Fourth Amendment's guarantees are implicated to a lesser degree in searches of

commercial cargo being carried by a commercial truck).[6]

We conclude that the district court did not err by determining that the random stop and inspection were necessary to promote Texas's statutory and regulatory scheme. *See Burger*, 482 U.S. at 702-03; *Dominguez-Prieto*, 923 F.2d at 469.

D. 3d Prong:  The statutes provide an adequate substitute for a warrant.

*Burger* requires that the statute's inspection program must: 1) advise the owner of the commercial premises that the search is being made pursuant to law; and 2) limit the discretion of the inspecting officers.  *See Burger*, 482 U.S. at 703.

The district court concluded that the Texas statutory scheme met both requirements because Texas law provides property owners with adequate notice that their vehicles may be seized and searched on the highways under section 644.103(a), and limits the discretion of the inspecting officers under section 644.104(b).

We agree, even though both statutes could have been more comprehensive and defined.  There is enough, however, to permit any owner of a commercial vehicle to be aware that he would be subject to warrantless and suspicionless stops

---

[6]     We also note that the federal statutes do not specifically prohibit random inspections of commercial motor vehicles.  *See* 49 U.S.C. § 31142(d).

while driving. *See Burger*, 482 U.S. at 703. Although the sections do appear to limit the discretion of an officer *after* the stop, *see* Tex. Transp. Code Ann. § 644.103(c) and § 644.104(b), they are subject to criticism for failing to provide specific limitations on the officer's discretion in making the decision to stop. *See Burger*, 482 U.S. at 703. We are satisfied, however, from the "background" testimony, that this stop met constitutional muster.

We conclude that the warrantless stop and inspection of Fort's commercial vehicle were valid under *Burger*'s regulatory exception to the warrant requirement.

Given our conclusion that the stop was permissible, we need not address the government's argument that this court should affirm because Officer Scales had probable cause or reasonable suspicion to stop Fort's truck based on his observation of a regulatory violation. We note, however, that the government waived this argument at the suppression hearing by expressly representing to the district court that it was relying on this evidence only as "background and not reasonable suspicion or probable cause for the stop." *See Matter of Christopher*, 28 F.3d 512, 521 (5th Cir. 1994) (waiver may be demonstrated by a showing that a party intended to relinquish a known right or privilege). As a result of the government's representation, the facts concerning the officer's observation were not developed. The time for doing so has passed.

**III. Constitutionality of 21 U.S.C. § 841 under *Apprendi v. New Jersey***

Fort contends that section 841 is unconstitutional because Congress intended the facts that determine the maximum sentence to be sentence enhancements rather than elements, in violation of *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000).  We recently rejected the argument that 21 U.S.C. §§ 841(a) and (b) are unconstitutional on their face in light of *Apprendi*.  *See United States v. Slaughter*, 238 F.3d 580, 582 (5th Cir. 2000) (revised opinion) (per curiam).  Fort's contention is rejected.

To the extent that Fort contends that the statute is unconstitutional as applied to him, this contention also lacks merit.  Fort contends that because the baseline marijuana offense is 21 U.S.C. § 841(b)(4), with a statutory maximum of one year, his 21-month sentence exceeds that maximum and violates *Apprendi*.  Because Fort did not raise the issue of the applicability of section 841(b)(4) in the district court, his contention is reviewed for plain error.  *See United States v. Rios-Quintero*, 204 F.3d 214, 215 (5th Cir.), *cert. denied*, 121 S. Ct. 301 (2000).

The one-year maximum sentence applies only to distribution of a "small amount of marihuana for no remuneration."  *See* 21 U.S.C. §§ 841(b)(4), 844.  Because the indictment specifically charged Fort with possessing 561.2 pounds of marijuana and he stipulated to that amount at the time of his plea, section 841(b)(4)

-14-

is inapplicable to the instant case. *See United States v. Salazar-Flores*, 238 F.3d 672, 674 n.1 (5th Cir. 2001) (rejecting argument that section 841(b)(4) applied where defendant admitted at the sentencing hearing that he possessed 195 pounds of marijuana because "195 pounds, under any standard, does not qualify as a 'small amount'").

The baseline statutory maximum is therefore 5 years under section 841(b)(1)(D), and *Apprendi* does not invalidate Fort's 21-month sentence. *See United States v. Keith*, 230 F.3d 784, 787 (5th Cir. 2000) (per curiam), *cert denied*, 121 S. Ct. 1163 (2001) (*Apprendi* applies only to cases in which the sentence exceeds the statutory maximum, not to cases in which a sentence is enhanced within the statutory range based on a finding of drug quantity).

Fort has not shown that his sentence exceeded the otherwise applicable statutory maximum. He therefore fails to demonstrate that his sentence violates *Apprendi*.

**AFFIRMED.**

E. GRADY JOLLY, Circuit Judge, dissenting:

Because I disagree with my colleagues' interpretation of the Texas statute and their application of the Burger test, I respectfully dissent.

First, I cannot accept that section 644.103 authorizes random, discretionary stops of commercial vehicles: The words "stop" and "detain" are simply not interchangeable. In Fourth Amendment cases, we have routinely distinguished between the initial stop and the ensuing detention. The evident reason for this distinction is that the purpose of the initial stop determines the proper scope of the subsequent detention and investigation. See, e.g., Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325-26, 75 L.Ed.2d 229 (1983) (plurality opinion). Section 644.103 addresses this issue by specifying the scope of the officer's investigative authority after he has lawfully stopped a commercial vehicle.[7]

_____

[7]The only state court decision interpreting section 644.103 supports this narrow reading. See $217,590 in United States Currency v. State, 970 S.W.2d 660 (Tex. App. 1998)(en banc), *rev'd on other grounds*, 18 S.W.3d 631 (Tex. 2000). In $217,590, the Texas officer stopped a truck with a missing mud flap. Because the officer had observed a traffic violation and had the authority to stop the truck, the question was whether the officer could perform a full commercial inspection under section 644.103 or whether he was limited to issuing a citation for the missing mud flap. The Texas appellate court explained that section 644.103 allows the officer to detain the truck for the purpose of conducting a full inspection. Id. at 664.

Second, I further depart from my colleagues because even if we assume that section 644.103 authorizes discretionary stops, the Texas statutory and regulatory scheme fails to provide "a constitutionally adequate substitute for a warrant." New York v. Burger, 482 U.S. 691, 703, 107 S.Ct. 2636, 2644, 96 L.Ed.2d 601 (1987). This third prong of the Burger test requires that the regulations "limit the discretion of the inspecting officers" and thereby produce a measure of "certainty and regularity" in how the scheme is applied. Id. It is undisputed that the regulations limit the officer's discretion *after* the stop, that is, the Texas regulations specify what may be inspected (e.g., the driver's log book, the bill of lading, the condition of the tires). But the Burger-related issue presented here is whether the statute limits the officer's discretion in choosing whom to stop. Instead of confronting this issue squarely, my colleagues rely on Officer Scales' "background testimony" that he believed Fort's truck had a flat tire. As they acknowledge, however, the Government never contended that such a basis for the stop existed until Officer Scales testified at the suppression hearing. When Fort objected to this testimony, the Government promptly and expressly waived any argument based on reasonable suspicion of a traffic violation. Consequently, as the majority recognizes, there was no further development of this testimony; and these purely factual questions of whether Scales actually heard a sound indicative of a flat tire and whether it had any

-17-

connection to the stop cannot be resolved by this appellate court.  See United States

v. Parker, 722 F.2d 179, 183 n.2 (5th Cir. 1983), *overruled on other grounds*,

United States v. Hurtado, 905 F.2d 74 (5th Cir. 1990)(en banc); see also Waganer

v. Sea-Land Service, Inc., 486 F.2d 955, 959 (5th Cir. 1973).  Thus, I am unable to

agree with my colleagues in their contradictory conclusion -- that the officer's

testimony is sufficiently reliable to show that the stop was not arbitrary and thus

"met constitutional muster" under Burger, while at the same time acknowledging

that the testimony is so undeveloped that it cannot establish reasonable suspicion of

a traffic violation.

     For these reasons, I respectfully dissent.