United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 29, 2005**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 04-60874
_____

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

                        versus

DAVID CASTELO,

                                        Defendant - Appellant.
_____

            Appeal from the United States District Court
             for the Northern District of Mississippi
_____

Before JOLLY, HIGGINBOTHAM, and JONES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

    In this appeal we consider whether the warrantless search of the appellant's truck falls within either the automobile exception or the pervasively regulated industry exception to the warrant requirement of the Fourth Amendment.

    During a roadside inspection, Mississippi Department of Transportation ("MDOT") officers found approximately 112 pounds of cocaine in the trailer of Castelo's truck. At trial, Castelo moved to suppress the cocaine. After a hearing, the motion was denied. Castelo ultimately accepted a plea agreement, under which he reserved the right to appeal the district court's denial of his motion to suppress. We hold that the Mississippi statutory scheme satisfies the requirements of <u>New York v. Burger</u>, 482 U.S. 691

(1987), that the initial stop was lawful under that scheme, that after the stop the officers acquired probable cause to believe the truck contained contraband, and that the ensuing search was properly conducted under the automobile exception to the warrant requirement.

I

On November 12, 2003, David Castelo and Luis Roberto Quintero were stopped by MDOT officers while driving a tractor-trailer rig north on Interstate 55 in Grenada County, Mississippi. The officers, Sergeant James T. Luttrell and Officer Mark Hendrix, were designated as a "portable scale team", assigned to weigh and perform roadside inspections of commercial vehicles.

Luttrell motioned the driver, Quintero, to the rear of the trailer and asked whether it was loaded. Quintero stated that the trailer was loaded with scrap metal. When asked where the trailer had been loaded, Quintero could not recall, but stated that it was "just a few miles from here". Luttrell then asked Quintero to produce various required documents for inspection -- specifically, the permit book, international fuel tax agreement, bill of lading, log book, driver's license, and registration. While Quintero was retrieving the documents, the officers inspected the seal and padlock on the trailer, and noted that the seal was fastened but not locked.

Luttrell later testified that, while he was inspecting the documents, Quintero was repeatedly sipping water from a bottle and

kicking grass on the shoulder of the road, and generally appeared uneasy. During the inspection, Luttrell discovered that the vehicle's registration had been illegally altered. When questioned, Quintero admitted that he had changed the registration's expiration date by writing the number "1" in front of the eight, causing the actual date –- November 8 –- to appear as November 18 (thus falsely indicating that the registration was valid at the time of the stop).

The officers then instructed Quintero to remove the padlock on the trailer so that they could verify that the actual cargo matched what was listed on the bill of lading. Quintero explained that the trailer had been sealed, to which Luttrell responded that he would break the seal, re-seal it after inspecting the cargo, and "sign off on his bill [of lading] that he had broken the seal".

Quintero proceeded to unlock the trailer and Luttrell entered to inspect the load. Luttrell testified that he saw two "soft carry bags" and a pillowcase lying on the floor of the trailer, and that outlines of "brick-shaped objects" protruded from the sides of the pillowcase. Suspecting that the objects were cocaine bricks, Luttrell exited the trailer and called for backup. Once the scene was secure, Quintero and Castelo were arrested. DEA agents confirmed that the bags contained 45 bricks of cocaine, weighing approximately 112 pounds.

Quintero and Castelo were each charged with one count of possession of a Schedule II narcotic controlled substance with

3

intent to distribute, in violation of 21 U.S.C. § 841(a). At trial, Castelo moved to suppress the cocaine on the grounds that Luttrell's warrantless search was unreasonable under the Fourth Amendment. After a suppression hearing, the district court denied the motion, as well as Castelo's motion for reconsideration. Castelo ultimately accepted a plea agreement, under which he reserved -- under FED. R. CRIM. P. 11(a)(2) -- the right to appeal the district court's denial of his motion to suppress.

## II

Castelo contends that the district court erred in denying his motion to suppress evidence obtained via Officer Luttrell's warrantless search of the trailer. We start with the premise that warrantless searches are per se unreasonable under the Fourth Amendment "unless they fall within a few narrowly defined exceptions". United States v. Saucedo-Munoz, 307 F.3d 344, 350 (5th Cir. 2002). Thus, the question before us is whether Luttrell's search fits within any such exception.

## A

As a threshold matter, we must determine whether the initial stop was permissible under the Fourth Amendment. Generally, where the police lack probable cause to stop a vehicle -- or some constitutionally adequate substitute therefor -- evidence obtained from a subsequent search of the vehicle may be suppressed. See, e.g., United States v. Miller, 146 F.3d 274, 277 (5th Cir. 1998). The government contends that both the stop and subsequent search of

4

the trailer were permissible under the "pervasively regulated industry" exception to the warrant requirement, as set forth in New York v. Burger.

Under Burger, a warrantless search of a pervasively regulated business is permitted if: (1) there is a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made; (2) the inspection is necessary to further the regulatory scheme; and (3) the statutory or regulatory scheme provides a constitutionally adequate substitute for a warrant. See 482 U.S. at 702-03.

Initially, it is clear that commercial trucking is a pervasively regulated industry. As we noted in United States v. Fort, the myriad federal and state statutes that govern commercial trucking place it squarely within the class of industries to which Burger applies. See 248 F.3d 475, 480 (5th Cir. 2001). It is also clear that Mississippi has a substantial interest that informs the regulatory scheme –- i.e., random roadside inspections and weighing of commercial vehicles –- pursuant to which the stop and search occurred. See id. ("[T]he state has a substantial interest in traveler safety and in reducing taxpayer costs that stem from personal injuries and property damage caused by commercial motor carriers.").

Thus, whether the stop was permissible under the pervasively regulated industry exception turns on whether the last two prongs of the Burger test are satisfied –- that is, (1) whether the stop

was necessary to further Mississippi's regulatory scheme, and (2) whether that scheme provides a constitutionally adequate substitute for a warrant.

1

Castelo contends that the stop in this case exceeded the statutory authority conferred to MDOT officers. As such, Castelo argues, the stop was not conducted in furtherance of Mississippi's regulatory scheme, as required under the second prong of Burger. The argument is without merit.

Section 63-5-49(1) of the Mississippi Code gives MDOT officers the authority to require drivers of commercial vehicles to "stop and submit to a weighing of the vehicle". Section 63-5-49(3) provides that "pursuant to subsection (1) ... [MDOT officers] shall have the authority to inspect such vehicle to determine whether or not such vehicle is engaged in the illegal transportation of contraband".

Castelo contends that, because the officers never actually weighed the rig in this case, Luttrell's search was not "pursuant to" a weighing stop, and therefore cannot be justified under § 63-5-49(3). This argument misses the point. As explained infra, the search of the trailer was supported by probable cause stemming from Quintero's conduct and various irregularities in the truck's documentation. As such, the government's reliance upon the "pervasively regulated industry" exception need extend only so far as the initial stop. Once the government establishes that the stop

6

was authorized under § 63-5-49(1), the question of whether the ensuing search was "pursuant to" that stop, as required by § 63-5-49(3), becomes moot for our purposes today.

Luttrell and Hendrix were designated as a "portable scale team" and were carrying portable scales at the time of the stop. Although it is true that they ultimately did not weigh the vehicle, Quintero's unusual behavior intervened and gave Luttrell probable cause to search the trailer and discover a large quantity of cocaine.

Thus, the initial stop in this case was authorized under § 63-5-49(1) of the Mississippi Code. We therefore hold that the stop was carried out in furtherance of Mississippi's regulation of the commercial trucking industry, as required under the second prong of Burger, and was a lawful stop.

2

Castelo further contends that, even if the initial stop was authorized under the relevant statutory provisions, those provisions fail to provide a "constitutionally adequate substitute for a warrant", as mandated by the third prong of the Burger test. We do not agree.

In order to satisfy Burger's requirement of a constitutionally adequate substitute for a warrant, a regulatory regime must (1) advise the owner of the regulated business that the inspection is being made pursuant to law; and (2) limit the discretion of the inspecting officers. See 482 U.S. at 703. Castelo concedes that

7

§§ 63-5-49(1) and (3) provide notice to commercial drivers that they may be subject to random stops and inspections. Thus, the question before us is whether Mississippi's regulatory scheme adequately limits the discretion of MDOT officers.

The government contends that the Mississippi Code limits the discretion of MDOT officers in three ways. First, the particular regulatory scheme at issue in this case applies exclusively to commercial vehicles. See MISS. CODE ANN. § 63-5-49(1). Second, and more generally, officers may stop and inspect only vehicles "operating upon the highways of [the] state". MISS. CODE ANN. § 27-19-137. Finally, the scope of the officers' discretion is limited by the scope of their duties.

These limitations are markedly similar to the limits on officer discretion in Burger and Fort. In Burger, the Supreme Court held that a New York statute, authorizing warrantless inspections of vehicle dismantling businesses, sufficiently limited officer discretion as to the "time, place, and scope" of the inspections because it: (1) limited inspections to regular business hours; (2) limited the scope of inspections to vehicles or parts of vehicles covered under the relevant statute; and (3) applied only to vehicle dismantling businesses. See 482 U.S. at 711-12. Likewise, in Fort, we held that a Texas statute sufficiently limited officer discretion because it limited inspections to "motor carriers" -- i.e., commercial vehicles -- at "reasonable time[s]". See 248 F.3d at 482.

8

Mississippi's regulatory scheme limits the scope of officer discretion in much the same manner as the statute in <u>Burger</u>, insofar as only commercial vehicles may be stopped and searched. Moreover, since MDOT officers may only stop commercial vehicles operating on a state highway, their discretion as to the time and place of a stop is likewise constrained. We therefore hold that the provisions of the Mississippi Code regulating commercial trucking place adequate limits on the discretion of inspecting officers, and thus, provide a constitutionally adequate substitute for a warrant.

In sum, having found all three prongs of the <u>Burger</u> test to be satisfied with respect to the Mississippi scheme, we hold that the initial stop of Castelo's vehicle by the MDOT officers was permissible under the "pervasively regulated industry" exception to the warrant requirement.

B

Thus, we reach the final determinant of this case: whether Luttrell's warrantless search of the trailer falls within any exception to the warrant requirement of the Fourth Amendment. The government contends that the search was permissible under both the automobile exception and the "pervasively regulated industry" exception. This may well be true, but because we hold that the former applies, we need not address the latter.

A warrantless search is permissible under the automobile exception if (1) the officer conducting the search had "probable

9

cause to believe that the vehicle in question contain[ed] property that the government may properly seize"; and (2) exigent circumstances justified the search. See United States v. Reyes, 792 F.2d 536, 538 (5th Cir. 1986). Given that Castelo and Quintero were stopped while traveling on an interstate highway, the requisite exigent circumstances were clearly present. See, e.g., United States v. Sinisterra, 77 F.3d 101, 104 (5th Cir. 1996) (exigent circumstances are supplied by "the fact of the automobile's mobility"). As such, the sole question before us is whether Luttrell's search was supported by probable cause.

Probable cause to search an automobile exists where "trustworthy facts and circumstances within the officer's personal knowledge would cause a reasonably prudent man to believe that the vehicle contains contraband". United States v. Edwards, 577 F.2d 883, 895 (5th Cir.) (en banc), cert. denied, 439 U.S. 968 (1978). In determining whether probable cause exists, "[e]ach individual layer of information is not to be weighed. Rather the 'laminated total' of the facts available is the source of the justification for a vehicle search". Id. (quoting Smith v. United States, 358 F.2d 833, 837 (D.C. Cir. 1966)).

The government contends that Luttrell had probable cause to search the trailer based on six facts:

1. Quintero's illegal alteration of the expiration date of his registration;

2. Quintero's inability to recall where he loaded the trailer, although he insisted

10

the location was "just a few miles from here";

3. The fact that the trailer was not sealed;

4. The fact that Quintero's log book showed that he had stopped in El Paso, Texas -- a known "source city" for illegal drugs -- for two full days;

5. Quintero's abnormal behavior, including refusal to make eye contact with the officers, repeatedly kicking the ground and sipping water, and glancing at the back of the trailer; and

6. Castelo's climbing out onto the running boards of the cab to watch events unfold at the back of the trailer.

We agree that these facts, when considered in context, support a finding that Luttrell had probable cause to search the trailer.

Castelo further contends that, even if probable cause existed to search the trailer, the further search of the bags in which the cocaine was found violated the Fourth Amendment. We find no merit in this argument. Where probable cause justifies the search of a lawfully stopped vehicle, "it justifies the search of every part of the vehicle and its contents that may conceal the object of the search". United States v. Ross, 456 U.S. 798, 825 (1982). Moreover, the "brick shaped" outlines visibly protruding from the bags would have established probable cause to search them, independent of the facts justifying the search of the trailer. We therefore hold that both Luttrell's search of the trailer and the subsequent search of the bags were permissible under the automobile exception to the warrant requirement.

11

III

Because both the initial stop of the vehicle and Luttrell's subsequent search of the trailer satisfy the reasonableness requirement of the Fourth Amendment, the district court did not err in denying Castelo's motion to suppress the evidence in this case. The judgment of the district court is, therefore,

AFFIRMED.