# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-10297

United States Court of Appeals
Fifth Circuit

**FILED**

March 26, 2015

Lyle W. Cayce
Clerk

JAMES ANDERTON; JIMMIE ANDERTON,

Plaintiffs - Appellants

v.

TEXAS PARKS AND WILDLIFE DEPARTMENT; TEXAS ANIMAL
HEALTH COMMISSION; CARTER SMITH, Executive Director, Texas Parks
and Wildlife Department; CRAIG HUNTER, Director, Texas Parks and
Wildlife Department; L. DAVID SINCLAIR, Chief Game Warden, Texas
Parks and Wildlife Department; MITCH LOCKWOOD, Big Game Warden,
Texas Parks and Wildlife Department; DALE WATERS, Game Warden,
Texas Parks and Wildlife Department; GARY COLLINS, Game Warden,
Texas Parks and Wildlife Department; BRAD CHAPPELL, Investigator,
Texas Parks and Wildlife Department; AMBER ANDEL, Deer Breeders
Program, Texas Parks and Wildlife Department,

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas
No. 3:13-CV-01641

Before BENAVIDES, SOUTHWICK, and COSTA, Circuit Judges.

PER CURIAM:*

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 14-10297

Plaintiffs James and Jimmie Anderton appeal the district court's dismissal of Section 1983 and RICO claims brought against officials of the Texas Parks & Wildlife Department ("the Department"). The Andertons also claim the district court abused its discretion by failing to provide them an opportunity to file an amended complaint. We AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

From 2000 until 2010, the Andertons possessed a current permit issued by the Department that authorized them to breed deer. Their breeding ranch was located east of Dallas in Quinlan, Texas. In 2010, 2011, and 2012, the Andertons submitted applications for renewal of the permit. The Department denied those applications without explanation.

It has been alleged in this litigation that the Andertons's permit was not renewed because they had illegally imported deer from another state. The Andertons had pled guilty, as shown in a federal court judgment of February 2, 2010, to the offense of conspiring to transport wildlife in interstate commerce in violation of Texas law. The Andertons were charged under the general federal conspiracy statute, 18 U.S.C. § 371. The substantive federal statutes setting forth the offense were 16 U.S.C. §§ 3372(a)(2)(A) and 3373(d)(2). Those are sections of what is called the Lacey Act. 16 U.S.C. §§ 3371-3378. The Texas laws they were charged in an information with violating were 31 Texas Administration Code Sections 65.609(b)(2), 65.611(h), and 65.611(i). The Department may refuse permit issuance or renewal to any person convicted of a violation of the Lacey Act. 31 TEX. ADMIN. CODE § 65.603(g)(2) (2010).

As mentioned above, the Andertons deer-breeding permit was not renewed in 2010. Such a permit is valid from the date of issuance until the immediately following July 1. 31 TEX. ADMIN. CODE 65.603(c). Apparently, then, as of July 1, 2010, four months after their February convictions, they no longer had a current permit to maintain breeder deer. On December 6, 2010,

2

No. 14-10297

and May 1, 2011, Department officials entered and shot breeder deer on the Andertons' land.  The Andertons allege the officials killed the deer in front of their family and several witnesses.

In April 2013, the Andertons brought suit in the United States District Court for the Northern District of Texas against the Texas Animal Health Commission and the Department for violations of the Fourth, Fifth, and Fourteenth Amendments, and the Racketeer Influenced and Corrupt Organizations Act ("RICO").  They also sued several Department officials in their official and individual capacities under 42 U.S.C. § 1983 and RICO. Additionally, they brought claims for injunctive and declaratory relief against all parties.  The district court dismissed the Andertons' Section 1983 and RICO claims against the officials in their individual capacities under Federal Rule of Civil Procedure 12(b)(6), and dismissed the remaining claims under Rule 12(b)(1).  The Andertons appealed.

## DISCUSSION

We review a dismissal under Rule 12(b)(6) *de novo*.  *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 487 (5th Cir. 2014) (citation omitted).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

A claim under 42 U.S.C. Section 1983 requires that a plaintiff "(1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*

No. 14-10297

*ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (citation and quotation marks omitted). Any rights the Andertons might have would arise from the Texas statutes and regulations governing breeder-deer operations. One statute provides that the "department shall issue a permit to a qualified person to possess live breeder deer[1] in captivity." TEX. PARKS & WILD. CODE § 43.352.[2] "[B]reeder deer may be held in captivity for propagation in [Texas] only after a deer breeder's permit is issued by the department[.]" *Id.* § 43.364. The permit may be renewed annually, subject to certain requirements and exceptions. *See* 31 TEX. ADMIN. CODE § 65.603(d), (g).

The Andertons raise six issues on appeal, which we will analyze in the following order:

1. The district court erred in dismissing their Fourth Amendment claims.

2. The district court erred in dismissing their substantive due process claims.

3. The district court erred in dismissing their procedural due process claims.

4. Alternatively, the district court abused its discretion by dismissing their Section 1983 claims partially on grounds raised by the court *sua sponte* without providing an opportunity to replead.

5. The district court abused its discretion by dismissing their RICO claim based on pleading defects raised by the court *sua sponte* without providing an opportunity to replead.

6. They stated cognizable claims against the defendants in their official capacities for declaratory relief based on the defendants' failure to renew their deer breeder permit.

---

[1] "'Breeder deer' means a white-tailed deer or mule deer legally held under a permit authorized by this subchapter." TEX. PARKS & WILD. CODE § 43.351(1).
[2] All statutes and regulations referenced in the opinion are the versions that were in effect at the time of the events in question.

4

No. 14-10297

*1. Fourth Amendment – Search and Seizure*

The Andertons' complaint alleges that the defendants engaged in both an unconstitutional search of their property and an unconstitutional seizure – the killing of the deer.  The defendants did not obtain a warrant for either the search or the seizure.

"Warrantless searches and seizures are per se unreasonable unless they fall within a few narrowly defined exceptions." *United States v. McKinnon*, 681 F.3d 203, 207 (5th Cir. 2012) (citation and quotation marks omitted).  One such exception is for a "closely regulated" industry.  *See New York v. Burger*, 482 U.S. 691, 702 (1987).  Under this exception,

> a warrantless search of a pervasively regulated business is permitted if:  (1) there is a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made; (2) the inspection is necessary to further the regulatory scheme; and (3) the statutory or regulatory scheme provides a constitutionally adequate substitute for a warrant.

*United States v. Castelo*, 415 F.3d 407, 409-10 (5th Cir. 2005) (citing *Burger*, 482 U.S. at 702-03).

The Andertons argue that the breeder-deer industry is not a closely regulated industry.  An industry is "closely regulated" where the "provisions regulating the [industry] are extensive." *Burger,* 482 U.S. at 704.  The Court found the operation of a junkyard to be closely regulated because the regulations required the operator to "obtain[] a license," "maintain [records]," and "make such records . . . available for inspection[.]" *Id.*  The operator was also "subject to criminal penalties . . . for failure to comply with these provisions." *Id.* at 704-05.

As in *Burger,* under Department statutes and regulations a deer breeder must obtain a permit, keep detailed records, and submit reports, and is subject to inspection of facilities and records at any time.  TEX. PARKS & WILD. CODE §§ 43.358, 43.359, 43.364; 31 TEX. ADMIN. CODE § 65.608.  Violation of the

No. 14-10297

statutes or regulations may result in nonrenewal of a deer breeder's permit and criminal penalties. TEX. PARKS & WILD. CODE §§ 43.365, 43.367; 31 TEX. ADMIN. CODE § 65.603. Accordingly, the provisions regulating the deer breeder industry are sufficiently "extensive" to place that activity "squarely within the class of industries to which *Burger* applies." *Castelo,* 415 F.3d at 410 (citation omitted); *see also United States v. Fort*, 248 F.3d 475, 480 (5th Cir. 2001) (holding that where an industry is governed by "extensive" regulations, the *Burger* principles apply).

The Andertons next argue that the deer-breeder statutes and regulations are not an adequate substitute for a warrant. To provide a constitutionally adequate substitute for a warrant, a regulatory scheme "must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers." *Burger*, 482 U.S. at 703 (citations omitted). The statute or regulation must put the owner on notice "that his property will be subject to periodic inspections undertaken for specific purposes," and "must be carefully limited in time, place, and scope." *Id.* (citations and quotation marks omitted).

We held a warrantless stop of a commercial trucker to be reasonable under the closely regulated industry exception. *See Castelo*, 415 F.3d at 411. The regulatory scheme was an adequate substitute for a warrant because the statutes "provide[d] notice to commercial drivers that they may be subject to random stops and inspections," and the "scope of officer discretion" was sufficiently limited as "only commercial vehicles may be stopped and searched," and only when "operating on a state highway . . . ." *Id.*

The statutes applicable to deer breeders provide notice that an "authorized employee of the department may inspect at any time and without warrant . . . any pen, coop, or enclosure holding . . . deer[.]" TEX. PARKS &

6

No. 14-10297

WILD. CODE § 43.358(1).  This statute satisfies the notice requirement.  Even where "statutes could have been more comprehensive and defined," the notice requirement is satisfied where they "permit an[] owner . . . to be aware that he would be subject to warrantless" action. *Fort*, 248 F.3d at 482 (citing *Burger*, 482 U.S. at 703).

The statutes and regulations are also sufficiently limited in "time, place and scope," as they apply only to the breeder-deer industry; the officials may inspect only a pen, coop, or enclosure holding breeder deer or records relating to such enclosures; and the deer may be disposed of only after 30 days has passed since the termination, revocation, or suspension of the deer breeder's permit.  TEX. PARKS & WILD. CODE §§ 43.351, 43.358, 43.364; 31 TEX. ADMIN. CODE § 65.612(c).  It is true that Section 43.358 does not limit the time for inspections. We agree with another panel of this court, though, that a statute provides a constitutionally adequate substitute for a warrant where it was limited in place and scope even if it permits inspections "as often as deemed necessary." *Ellis v. Miss. Dept. of Health*, 344 F. App'x 43, 45 (5th Cir. 2009) (citation and quotation marks omitted).

Finally as to the closely regulated industry exception, the Andertons claim Department officials exceeded the scope of the statutorily allowed conduct under *Club Retro L.L.C. v. Hilton,* 568 F.3d 181 (5th Cir. 2009).  In *Club Retro*, forty deputy sheriffs, some "in full S.W.A.T. gear and black ski masks," went into the plaintiffs' business with shotguns, assault rifles, and pistols drawn. *Id.* at 191.  Employees "thought that they were being robbed by armed gunmen"; some were "thrown to the ground" and held "at gunpoint." *Id.* at 192.  The deputies "searched every patron and employee" instructing some women "to reach under their shirts, lift up their bras, and shake them so the deputy sheriffs could see if any illegal drugs would fall out." *Id.*  The owners of the club were "seized, assaulted, battered, and handcuffed" and "transported

7

to a warehouse holding facility and held for over six hours." *Id*. at 191. We held that while the statutes "may have provided justification for an entry and inspection of Club Retro," they did not "permit[] the scope and manner of the raid that plaintiffs allege occurred here." *Id*. at 197.

There was no similarly excessive use of regulatory authority in the present case. Department officials did what the statutes and regulations authorized. They entered onto the Andertons' property in order to dispose of any breeder deer that remained on the land 30 days after expiration of the deer breeder's permit. Under the applicable closely regulated industry exception, the warrantless search was not unconstitutional.

Once the Department officials were properly on the premises, their use of their statutory authority to seize the deer was valid. The Fourth Amendment generally prohibits warrantless seizures; however, the "plain view" exception allows government officials to seize items where: "(1) the [officials] lawfully entered the area where the item was located; (2) the item was in plain view; (3) the incriminating nature of the item was 'immediately apparent;' and (4) the [officials] had a lawful right of access to the item." *United States v. Rodriguez*, 601 F.3d 402, 407 (5th Cir. 2010) (quoting *Horton v. California*, 496 U.S. 128, 136-37 (1990)).

The district court held the plain view doctrine applied to the warrantless seizure of the deer because the deer were in plain view, the officials were acting under constitutionally adequate state regulations when conducting the inspection of the Andertons' breeder deer, and the incriminating nature of the deer was immediately apparent because the officials had probable cause to believe the breeder deer were contraband. The Andertons argue the district court's holding was in error as it assumed facts not stated in the complaint.

It is true that the complaint contains few facts regarding the seizure. We concluded above, consistent with the facts alleged in the complaint and the

relevant law, that Department officials lawfully entered the Andertons' property and had the right to kill the deer.  The officials knew it had been more than 30 days since the deer breeder's permit had expired; thus, any deer remaining on the Andertons' land were there illegally.  Lastly, the deer were in plain view of the officials.  Though the Andertons argue on appeal that many deer "were obscured by tall grasses and trees," the Department officials had lawful access to the entire enclosure.  Even if the deer were located in areas obscured by tall grasses and trees, the officials were allowed to venture into such areas and, once there, the deer would have been in plain view.

Because the requirements of the plain view doctrine are met, the Andertons have failed to state a claim for violation of the Fourth Amendment as to the warrantless seizure of the deer.

### 2. Fourteenth Amendment – Substantive Due Process

The Andertons also assert the defendants violated their substantive due process rights by killing the deer.  "To prevail on a substantive due process claim, [a plaintiff] must first establish that it held a constitutionally protected property right to which the Fourteenth Amendment's due process protection applies." *Simi Inv. Co., Inc. v. Harris Cnty., Tex.,* 236 F.3d 240, 249-50 (5th Cir. 2000) (citations omitted).  One recognized means of violating substantive due process, and the one on which the plaintiffs rely, is for official conduct to take life, liberty, or property in a manner that "shocks the conscience." *Conroe Creosoting Co. v. Montgomery Cnty., Tex.,* 249 F.3d 337, 341 (5th Cir. 2001) (citations omitted).  The "burden to show state conduct that shocks the conscience is extremely high, requiring stunning evidence of arbitrariness and caprice that extends beyond mere violations of state law, even violations resulting from bad faith to something more egregious and more extreme." *Doe*, 675 F.3d at 868 (citation and quotation marks omitted).  Official conduct

"intended to injure in some way unjustifiable by any government interest," is the conduct "most likely to rise to the conscience-shocking level . . . ." *Chavez v. Martinez*, 538 U.S. 760, 775 (2003) (citation and quotation marks omitted).

The Andertons argue the killing of the deer "shocks the conscience." Even if there were a protected property interest in the deer – an issue we will analyze in the next section on procedural rights – Department officials were acting pursuant to state law, not violating it. The Andertons failed to allege facts that established the conduct of the officials was intended to injure them unjustifiably. The district court stated that though the allegations "may raise questions related to the most humane ways to kill deer, [they] do not plausibly establish that the officials' conduct was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."

The Andertons have failed to demonstrate a violation of substantive due process under the Fourteenth Amendment.

*3. Fourteenth Amendment – Procedural Due Process*

A claim brought under Section 1983 for violation of procedural due process rights under the Fourteenth Amendment requires identification of a protected life, liberty, or property interest and a sufficient allegation that there was a deprivation of that interest by the government. *See Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010). State law is often the source of the benefit, and the plaintiff must show a legitimate claim to an entitlement:

> The procedural component of the Due Process Clause does not protect everything that might be described as a "benefit": To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. Such entitlements are, of course, not created by the Constitution. Rather, they are created and their dimensions

are defined by existing rules or understandings that stem from an independent source such as state law.

*Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) (citations, alterations, and quotation marks omitted). "[I]f government officials may grant or deny [the interest] in their discretion," the interest is not protected by due process. *Id.* (citation omitted). "In determining whether statutes and regulations limit official discretion . . . we are to look for 'explicitly mandatory language,' *i.e.*, specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow.'" *Ridgely v. FEMA*, 512 F.3d 727, 735-36 (5th Cir. 2008) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989)).

We find there to be official discretion in the relevant regulations. The most important of the regulations begins with an obligation on individuals like the Andertons: "An applicant for an initial deer breeder's permit shall submit the following to the department," and then lists five categories of information. 31 TEX. ADMIN. CODE § 65.603(a)(1)-(5). The language that follows for the Department's response to the application is not one of obligation: "A deer breeder's permit may be issued when" the application, other documents, and fees have been received. *Id.* § 65.603(b). For renewals, the regulation also omits mandatory language: "Except as provided in subsection (g) of this section, a deer breeder's permit may be renewed annually, provided that the applicant" has submitted a timely renewal application, filed an annual report, paid the renewal fee, and is then in compliance with the statutory subchapter. *Id.* § 65.603(d). The provision just noted as an exception is also permissive: "The department may refuse permit issuance or renewal to any person who has been" convicted or otherwise been found guilty, even if only receiving a deferred adjudication, of violation of certain offenses under the Parks and

No. 14-10297

Wildlife Code. *Id.*, § 65.603(g). In all these provisions, the Department is given discretion to decide whether the particular application should be granted.

The only mandatory language cited to us by the Andertons concerns the issuance of the initial permit, not a renewal: "The department shall issue a permit to a qualified person . . . ." TEX. PARKS & WILD. CODE § 43.352(a).

For a constitutionally protected property right to be created, there must be a clear entitlement to the governmental benefit.[3]  We have held that statutory language such as "*may* provide financial assistance" or "*may* provide continued housing assistance" was permissive, not mandatory, and did not create a protected property interest.  *Ridgely*, 512 F.3d at 736 (citations omitted).

The Department relies both on the seemingly permissive language of the regulations and the fact that the mandatory statutory language applies only to a "qualified person." Because the Andertons were not qualified, the Department argues, no process was constitutionally due before denial of a renewal or a new permit.  This argument assumes the Department could independently determine the Andertons were not qualified, and that the Andertons were not entitled to any process to attempt to prove they actually were qualified.  The Andertons argue they were qualified because they were not convicted of violating the Lacey Act but of conspiracy to do so.  Regardless of the validity of that argument, the Andertons were not given the opportunity to make the argument to the Department in a permit-renewal process.

We do not rely on the question of whether the Andertons were qualified. Instead, we conclude that because the relevant statutes and regulations do not

---

[3] In a bankruptcy case cited to us, the issue was whether the then-existing permit was property of the estate; it was.  *In re Wheeler,* 431 B.R. 158, 160 (N. D. Tex. 2005).  The court did not discuss whether a permit was a protected property interest for due process purposes.

require the Department to renew a permit even when an applicant timely seeks one and is qualified, the Andertons had no property right to a renewal.

The Andertons also claim that the killing of the deer was a procedural due process violation because they had a protected property interest in the deer herd. Under Texas law, though, breeder deer belong to the state, not the permittee. *See, e.g.,* TEX. PARKS & WILD. CODE §§ 1.011 ("All wild animals . . . inside the borders of this state are the property of the people of this state."); 43.364 ("All breeder deer . . . are under the full force of the laws of [Texas] pertaining to deer . . . ."). While a permittee may have possession of the breeder deer, the deer are only "held under a permit[.]" *Id.* § 43.351. Nowhere do the statutes or regulations state that breeder deer become the property of a permit holder.[4] Regardless, even if they did give ownership of breeder deer to permit holders, the Andertons were not permit holders when the deer were killed.

Because the Andertons cannot claim a constitutionally protected property interest in the deer herd, their procedural due process claim as to the killing of the deer fails.

### 4. & 5. *Opportunity to Replead*

The Andertons argue the district court erred in two important respects when it made rulings without offering the Andertons an opportunity to replead. As their fourth appellate issue, they argue that the district court dismissed in part on grounds the court raised on its own, and that they could

---

[4] The Andertons argue that deer are not wild animals and therefore not owned by the state, citing *Wiley v. Baker*, 597 S.W.2d 3, 5 (Tex.App. – Tyler 1980, no writ). Although the court stated a person may have "[u]nqualified property rights in wild animals" when they are "made subjects of man's dominion," it did so in the context of a conversion case between two private parties. *See id.* at 5. The court was not addressing whether a person holding deer pursuant to a deer breeder's permit takes ownership from the state.

have responded to the judicially identified inadequacies by repleading. As their fifth issue, the Andertons claim error in the dismissal of their RICO claim without an opportunity to replead.

Where there is a denial by the district court of a motion for leave to amend, we review the decision for abuse of discretion. *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (citation omitted). Leave to amend should be "given when justice so requires, and should be granted absent some justification for refusal." *Id.* at 386 (citation and quotation marks omitted). Federal Rule of Civil Procedure 15(a) applies "where plaintiffs expressly request[] to amend" their complaint, though a "formal motion is not always required . . . ." *Id.* at 387 (citations and quotation marks omitted). When a party does not ask the district court for leave to amend, it is not for this court to grant the unstated request. *Id.*

The Andertons never asked the district court for leave to amend their complaint. They contend the district court should have offered an opportunity to replead because it dismissed their Section 1983 and RICO claims on different grounds than those raised by the defendants. In a case cited to us by the Andertons, we reversed the district court's *sua sponte* dismissal of claims that the defendants had not moved to dismiss. *See Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310 (5th Cir. 2014). Here, the defendants moved for dismissal of each claim the district court dismissed. The plaintiffs' argument is without merit.

*6. Declaratory Relief*

The Eleventh Amendment bars suits against state officials "if the State is the real party in interest." *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013) (citation and quotation marks omitted). The state is the real party in interest when the court's decision "would operate against the sovereign,

No. 14-10297

expending itself on the public treasury, interfering with public administration, or compelling the state to act or to refrain from acting." *Hughes v. Savell*, 902 F.2d 376, 378 (5th Cir. 1990) (citing, among other cases, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984)).

The Andertons argue they are entitled to pursue declaratory relief against the Department officials in their official capacity to "establish that Plaintiffs should have been issued a permit for possessing the breeder deer in 2010 and 2011 . . . and that they remain qualified persons entitled to a permit . . . ." The state is the real party in interest as a decision in the Andertons' favor would compel the Department itself to act. *See id.*; TEX. PARKS & WILD. CODE § 43.352. Thus, the district court's dismissal of the Andertons' request for declaratory relief was correct.

AFFIRMED.

15