ACCEPTED
15-24-00052-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
1/7/2025 7:51 PM
CHRISTOPHER A. PRINE
CLERK

**No. 15-24-00052-CV**

# In the Fifteenth Court of Appeals

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
1/7/2025 7:51:34 PM
CHRISTOPHER A. PRINE
Clerk

Richard M. YOUNG, Jr. a/k/a Richard Young,
*Appellant,*

vs.

TEXAS PARKS & WILDLIFE DEPARTMENT, et al.,
*Appellees.*

## BRIEF OF APPELLEES

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney
General

JAMES LLOYD
Deputy Attorney General
for Civil Litigation

KELLIE E. BILLINGS-RAY
Chief, Environmental Protection
Division

IAN LANCASTER
State Bar No. 24097964
ian.lancaster@oag.texas.gov

H. CARL MYERS
State Bar No. 24046502
carl.myers@oag.texas.gov

HEATHER COFFEE
State Bar No. 24138102
heather.coffee@oag.texas.gov

Assistant Attorneys General
Environmental Protection Division
P. O. Box 12548, MC-066
Austin, Texas 78711-2548
(512) 463-2012
(512) 320-0911 (fax)
COUNSEL FOR APPELLEES

**Oral Argument Conditionally Requested**

# TABLE OF CONTENTS

Table of Contents .................................................................................ii

Index of Authorities ......................................................................... iv

Statement Regarding Oral Argument.............................................. x

Statement of Facts............................................................................ 1

I.    Statutory Framework .............................................................. 1

II.   Factual Background ..............................................................5

III.  Procedural Background ........................................................6

Summary of the Argument...............................................................8

Standard of Review ..........................................................................9

Argument ........................................................................................11

I.    The Trial Court Correctly Granted Appellees' Plea to the Jurisdiction Dismissing Appellant's Takings Claims ...........................................11

    A. Takings claims are expressly limited to vested property rights.....11

    B. Established precedent examining the unambiguous statutes at issue confirms deer breeders have no vested property right in breeder deer........................................................................... 13

    C. Appellant's takings claims are each barred by sovereign immunity. ........................................................................... 18

    D. *Tyler* does not upend the established precedent. .........................23

    E. Appellant's arguments regarding "investment-backed expectations" were not pled nor do they overcome the state's legitimate interest in the health of the public's deer as to constitute a regulatory taking..................................................26

    F. Appellant's takings claims are not ripe where there has been no actual taking pled. ....................................................... 31

II.   The Trial Court Correctly Granted Appellees' Plea to the Jurisdiction Dismissing Appellant's Due Process Claims ....................................33

    A. Without a vested property right in breeder deer, Appellant's due process claims are not viable..................................................33

B. Appellant's economic liberty and legitimate state interest arguments fail to save his unviable due process claims. ............ 37

III. The Trial Court Correctly Granted Appellees' Plea to the Jurisdiction Dismissing Appellant's Ultra Vires Claims ...................................... 39

Conclusion and Prayer ............................................................................. 45

Certificate of compliance.......................................................................... 47

Certificate of Service.................................................................................48

# INDEX OF AUTHORITIES

## Cases

*Am. Campus Communities, Inc. v. Berry,*
667 S.W.3d 277 (Tex. 2023)..................................................................36

*Anderton v. Tex. Parks & Wildlife Dep't*, 605 F. App'x 339 (5th Cir.
2015) ........................................................................................ 15, 16, 2

*Bailey v. Smith,*
581 S.W.3d 374 (Tex. App.—Austin 2019, pet. denied) ..................passim

*Barshop v. Medina Cnty. Underground Water Conservation Dist.,*
925 S.W.2d 618 (Tex. 1996) ............................................................31, 32

*Bland Indep. Sch. Dist. v. Blue,*
34 S.W.3d 547 (Tex. 2000).....................................................................9

*Bolling v. Tex. Animal Health Comm'n,*
718 S.W.2d 819 (Tex. App.—Corpus Christi 1987, writ ref'd n.r.e.)......29

*Brown v. De La Cruz,*
156 S.W.3d 560 (Tex. 2004) .................................................................36

*City of El Paso v. Heinrich,*
284 S.W.3d 366 (Tex. 2009).................................................................. 41

*City of Houston v. Northwood Mun. Util. Dist.*
*No. 1,* 73 S.W.3d 304 (Tex. App.—Houston [1st Dist.] 2001, pet.
denied)................................................................................... 34, 35

*City of Houston v. Trail Enterprises, Inc.,*
377 S.W.3d 873 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) . 27

*City of Keller v. Wilson,*
168 S.W.3d 802 (Tex. 2005)...................................................................11

*City of La Marque v. Braskey,*
216 S.W.3d 861 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).... 12

*City of Richardson v. Bowman,*
555 S.W.3d 670 (Tex. App.—Dallas 2018, pet. denied) .......................33

*Clint Indep. Sch. Dist. v. Marquez,*
487 S.W.3d 538 (Tex. 2016) ................................................................ 10

*Cockrell Inv. Partners, L.P. v. Middle Pecos Groundwater Conservation Dist.*,
677 S.W.3d 727 (Tex. App.—Dallas 2023, pet. filed Oct. 27, 2023).. 9, 10

*Combs v. City of Webster*,
311 S.W.3d 85 (Tex. App.—Austin 2009, pet. denied).................... 12, 34

*Crowder v. U.S. Dept of Agric.*,
No. 1:22-CV-479-DAE, 2023 WL 4824931 (W.D. Tex. July 27, 2023). 16

*Cypress Forest P.U.D. v. Kleinwood M.U.D.*,
309 S.W.3d 667 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ....... 12

*Dall. Area Rapid Transit v. Whitley*,
104 S.W.3d 540 (Tex. 2003) ............................................................. 10

*FLCT, Ltd. v. City of Frisco*,
493 S.W.3d 238 (Tex. App.—Fort Worth 2016, pet. denied)................28

*Harris County v. Sykes*,
136 S.W.3d 635 (Tex. 2004) ............................................................... 9

*Honors Acad., Inc. v. Tex. Educ. Agency*,
555 S.W.3d 54 (Tex. 2018)................................................................ 33

*Hous. Belt & Terminal Railway Co. v. City of Houston*,
487 S.W.3d 154 (Tex. 2016) .............................................................. 41

*In re Wheeler*,
431 B.R. 158 (N.D. Tex. 2005) ......................................................22, 20

*Klumb v. Houston Mun. Emps. Pension Sys.*,
458 S.W.3d 1 (Tex. 2015) ............................................................. 34, 41

*Matzen v. McLane*,
659 S.W.3d 381 (Tex. 2021)............................................................. 41

*McGarry v. Hous. Firefighters' Relief & Ret. Fund*,
680 S.W.3d 14 (Tex. App.—Houston [1st Dist.] 2023, pet. denied) ..... 37

*Patel v. Tex. Dept. of Licensing & Regulation*,
469 S.W.3d 69 (Tex. 2015) ......................................................37, 39, 41

*Penn Cent. Transp. Co. v. City of New York*,
438 U.S. 104 (1978) ........................................................................ 27

*RecordBuck Inc. et al v. Schwartz et al, C.A.* No. 2:17-CV-00068 (W.D. Tex. 2017) (Nov. 22, 2017 order) ........................................................... 32

*Runnels v. State,*
213 S.W.2d 545 (Tex. Crim. App. 1948) .............................................. 22

*Schroeder v. Escalera Ranch Owners' Association, Inc.,*
646 S.W.3d 329 (Tex. 2022) .......................................................... 42, 43

*Scott v. Alphonso Crutch LSC Charter Sch., Inc.,*
392 S.W.3d 165 (Tex. App.—Austin 2010, pet. denied) ...................... 12

*Severance v. Patterson,*
370 S.W.3d 705 (Tex. 2012) ................................................................ 11

*Sheffield Dev. Co. v. City of Glenn Heights,*
140 S.W.3d 660 (Tex. 2004) ............................................................... 27

*Spring Branch Indep. Sch. Dist. v. Stamos,*
695 S.W.2d 556 (Tex. 1985) ............................................................... 12

*State v. Bartee,*
894 S.W.2d 34 (Tex. App.—San Antonio 1994, no pet.) ............... passim

*State v. Holland,*
221 S.W.3d 639 (Tex. 2007) ............................................................... 35

*State v. Morales,*
869 S.W.2d 941 (Tex.1994) ................................................................ 37

*State/Operating Contractors ABS Emissions, Inc. v. Operating Contractors/State,*
985 S.W.2d 646 (Tex. App.—Austin 1999, pet. denied) ...................... 11

*Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envt'l Prot.,*
560 U.S. 702 (2010) ............................................................................ 11

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.,*
852 S.W.2d 440 (Tex. 1993) ............................................................ 9, 10

*Tex. Comm'n on Envt'l Quality v. City of Waco,*
413 S.W.3d 409 (Tex. 2013) ............................................................... 36

*Tex. Dep't of Parks and Wildlife v. Miranda,*
133 S.W.3d 217 (Tex. 2004) ............................................................ 9, 10

*Tex. Dept of State Health Servs. v. Crown Distrib. LLC,*
    647 S.W.3d 648 (Tex. 2022) ........................................................ 34, 37

*Tex. Nat. Res. Conservation Comm'n v. IT-Davy,*
    74 S.W.3d 849 (Tex. 2002) .................................................................. 10

*Tex. Parks & Wildlife Dep't v. Sawyer Tr.,*
    354 S.W.3d 384 (Tex. 2011) ................................................................ 32

*Tex. S. Univ. v. State Street Bank & Trust Co.,*
    212 S.W.3d 893 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) .... 11

*Tyler v. Hennepin County,*
    598 U.S. 631 (2023) .................................................... 23, 24, 25

*United States v. Dickinson,*
    331 U.S. 745 (1947) ............................................................................ 32

*United States v. Donaldson,*
    334 F. Supp. 3d 820 (S.D. Miss. 2018) .............................................. 30

*Univ. of Tex. Med. Sch. v. Than,*
    901 S.W.2d 926 (Tex. 1995) ............................................................... 33

*Wiley v. Baker,*
    597 S.W.2d 3 (Tex. Civ. App.-Tyler 1980, no writ) .............................. 16

**Constitutional Provisions & Statutes**

Tex. Const. art. II, § 1 ................................................................................ 18

Tex. Const. art. XVI, § 59 ............................................................................. 1

Tex. Const. art. XVI, § 59(a) ........................................................................ 1

4 Tex. Admin. Code § 40.2 ........................................................................... 5

31 Tex. Admin. Code §§ 65.82(2); 65.85; 65.88 .......................................... 6

Tex. Agric. Code § 161.041(b)(g) ................................................................. 4

Tex. Parks & Wild. Code § 1.003(3) ........................................................... 16

Tex. Parks & Wild. Code § 1.011 .................................................................. 1

Tex. Parks & Wild. Code § 1.011(a) .............................................................. 1

Tex. Parks & Wild. Code § 1.101(4) ......................................................... 1, 13

Tex. Parks & Wild. Code § 12.013 .................................................................. 19

Tex. Parks & Wild. Code § 12.013(a) ............................................ 18, 42, 44

Tex. Parks & Wild. Code § 43.061(a) .................................................... 1

Tex. Parks & Wild. Code § 43.351 ...................................................... 2

Tex. Parks & Wild. Code §§ 43.351-369 ............................................ 2

Tex. Parks & Wild. Code § 43.352(a) .................................................. 2

Tex. Parks & Wild. Code § 43.353 ...................................................... 2

Tex. Parks & Wild. Code § 43.357 .................................................... 20

Tex. Parks & Wild. Code § 43.357(a) .................................................. 4

Tex. Parks & Wild. Code § 43.357(b) .............................................. 5, 20

Tex. Parks & Wild. Code §§ 43.357, 43.364 ...................................... 21

Tex. Parks & Wild. Code § 43.358 ...................................................... 3

Tex. Parks & Wild. Code § 43.359 ...................................................... 3

Tex. Parks & Wild. Code § 43.360 ...................................................... 3

Tex. Parks & Wild. Code § 43.362 .................................................... 20

Tex. Parks & Wild. Code §§ 43.362-3 .................................................. 3

Tex. Parks & Wild. Code § 43.363 .................................................... 20

Tex. Parks & Wild. Code §§ 43.364, 366 .......................................... 3, 13

Tex. Parks & Wild. Code § 43.365 ................................................... 3, 20

Tex. Parks & Wild. Code § 43.366 .................................................... 24

Tex. Parks & Wild. Code § 43.367 ...................................................... 4

Tex. Parks & Wild. Code § 43.369 ...................................................... 2

Tex. Parks & Wild. Code §§ 43.951-.955 ............................................ 4

Tex. Parks & Wild. Code § 43.953 ............................................... 38, 40

Tex. Parks & Wild. Code § 43.953(a)(2) ............................................ 43

Tex. Parks & Wild. Code § 43.953(b) ........................................... 19, 42

Tex. Parks & Wild. Code §§ 43.953-.954 ...................................................... 5

Tex. Parks & Wild. Code § 43.954 ..................................................... 39, 40

Tex. Parks & Wild. Code § 43.954(b)(2) ...................................................... 43

Tex. Parks & Wild. Code § 43.995 ...................................................... 19

Tex. Parks & Wild. Code § 43.3561 ...................................................... 2, 3

Tex. Parks & Wild. Code § 43.3591 ...................................................... 3

Tex. Parks & Wild. Code § 63.001 ...................................................... 16

Tex. Parks & Wild. Code § 63.001(a) ...................................................... 2

Tex. Parks & Wild. Code § 63.002 ...................................................... 2, 4

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Richard M. Young, Jr. a/k/a Richard Young raises one issue on appeal: whether the trial court erred in granting Appellees' non-evidentiary Plea to the Jurisdiction. The short answer to the single issue raised by Appellant—no—is found in well-settled case law applying the State's unambiguous regulations governing breeder deer. Texas law has never been interpreted, by any court applying it, to confer vested property rights in breeder deer to deer breeders. That principle is fatal to Appellant's claims. As set forth in this brief, Appellees rely on settled propositions of law and the unambiguous statutes underlying them. However, should this Court determine oral argument will be beneficial, Appellees request to be heard.

# STATEMENT OF FACTS

## I. Statutory Framework

The Texas Constitution directs the Legislature to pass laws to protect the state's natural resources. Tex. Const. art. XVI, § 59(a). "All wild animals, fur-bearing animals, wild birds, and wild fowl inside the borders of this state are the property of the people of this state." Tex. Parks & Wild. Code § 1.011(a); *see also* Tex. Const. art. XVI, § 59.

Texas Parks and Wildlife Department and its Director (Parks), as an executive state agency, are responsible for administering laws related to wildlife, including protecting the state's fish and wildlife resources, and possesses "broad enforcement powers to carry out this task." *Bailey v. Smith*, 581 S.W.3d 374, 382 (Tex. App.—Austin 2019, pet. denied); *see also State v. Bartee*, 894 S.W.2d 34, 42-43 (Tex. App.—San Antonio 1994, no pet.). White-tailed deer are both historically and statutorily considered a natural resource belonging to the people of Texas and, as such, fall under the jurisdiction, stewardship, and management of Parks.[1] *Bartee*, 894 S.W.2d at 43.

White-tailed deer are "game animals" that may not be legally possessed in Texas subject to explicit exceptions within the Parks and Wildlife Code.

---

[1] *See also* Tex. Parks & Wild. Code §§ 1.011(a), 1.101(4), 12.001, 12.0011(a), 43.366(a), 61.002, 61.052, 61.054.

Tex. Parks & Wild. Code §§ 63.001(a), 63.002. However, Parks is authorized to issue permits allowing "qualified person[s] to possess live breeder deer in captivity." *Id.* § 43.352(a). Because it is a criminal offense to keep any of the public's deer in captivity, a deer breeder's permit is a defense "[i]n any prosecution for the unlawful possession or transportation of white-tailed deer... if the conduct was authorized under the terms of the permit." *Id.* § 43.353. The limited ability to hold the public's deer in captivity is granted to deer breeders under very specific terms and conditions. *Id.* §§ 43.351-369.

Breeder deer are highly regulated[2], and the relevant regulations are far from ambiguous. This is not a case where the Legislature has left much, if any, room for statutory interpretation from Parks:

- Definitionally, "[b]reeder deer" refer to "deer held legally under a permit authorized by this subchapter." *Id.* § 43.351;

- Breeder deer are subject to extensive identification requirements. *Id.* § 43.3561;

- Information on breeder deer is collected and kept in a state-run database. *Id.* § 43.369;

---

[2] *See Anderton v. Tex. Parks & Wildlife Dep't*, 605 F. App'x 339, 343–44 (5th Cir. 2015) (finding the "provisions regulating the deer breeding industry are sufficiently 'extensive'" to warrant classification as a highly regulated industry).

- Breeder deer are subject to inspection "at any time and without warrant[.]" *Id.* § 43.358;

- Records and reports must be kept, and made available to Parks, detailing "all breeder deer acquired, purchased, propagated, sold, transferred, or disposed of and any other information required by the department that reasonably relates to the regulation of deer breeders." *Id.* § 43.359;

- Breeder deer are subject to genetic testing upon request from Parks. *Id.* § 43.3591;

- The size of breeder deer enclosures is regulated. *Id.* § 43.360;

- Where breeder deer may be released is regulated. *Id.* § 43.3561;

- Sale or transfer of breeder deer is regulated, including seasonal, time-based restrictions. *Id.* § 43.362-3;

- **The statutory scheme reinforces state ownership of breeder deer:** "All breeder deer and increase from breeder deer are under the full force of the laws of this state pertaining to deer[.]" *Id.* §§ 43.364, 366;

- Certain acts, including as related to the sale of breeder deer, are prohibited. *Id.* § 43.365;

- There are criminal penalties for violation of these extensive and unambiguous regulations. *Id.* § 43.367.

In return for agreeing to the full set of terms and conditions including those outlined above, permittees are allowed to "sell, transfer to another person, or hold in captivity live breeder deer for the purpose of propagation or sale." *Id.* § 43.357(a).

The same statutory scheme also contemplates a need to control and prevent disease outbreaks, including Chronic Wasting Disease (CWD)[3], among breeder deer. *Id.* §§ 43.951-55. The Legislature has delegated authority to both Parks and the Texas Animal Health Commission (TAHC) to manage and respond to CWD outbreaks in Texas. *Id.*

TAHC and Parks have several tools at their disposal aimed at reducing further spread following CWD detection at a breeding facility, including but not limited to: (1) quarantine orders; (2) herd plans; (3) surveillance zones; and (4) containment zones which may be created in areas where CWD detection is probable or reasonably expected. *See* Tex. Agric. Code

---

[3] *Bailey*, 581 S.W.3d at 383. CWD is classified as a transmissible spongiform encephalopathy (TSE), a family of diseases that includes scrapie (found in sheep) and bovine spongiform encephalopathy (BSE, found in cattle and commonly known as "Mad Cow Disease"), and variant Creutzfeldt-Jakob Disease (vCJD) in humans.

§§ 161.041(b)(g); 4 Tex. Admin Code § 40.2; Tex. Parks & Wild. Code §§ 43.357(b), 43.953; 61.054. When mitigation techniques fall short or where the spread of CWD is too entrenched to employ alternative measures, the Legislature has delegated to Parks the exclusive authority to depopulate CWD-infected breeding facilities to prevent further spread of the disease. Tex. Parks & Wild. Code §§ 43.953-54.

## II.    Factual Background

Appellant operates two permitted breeding facilities at Triple AAA&J Ranch (Facility 9133B and Facility 21119B) (collectively, the Facility).[4] Together, they contain 124 white-tailed deer, at least 13 of which have died and tested positive for CWD as of May 30, 2024.[5] As a result of these CWD-positive deaths, the TAHC[6] placed the breeding facilities under a Quarantine Order on September 13, 2022.[7]

Considering the positive CWD results at the Facility, Parks separately created a surveillance zone by emergency rule in the surrounding area.[8] A surveillance zone restricts the movement of deer and deer carcasses out of

---

[4] CR at 166-167.
[5] *Id*.
[6] As noted in Appellant's Br. at 17, n.5, TAHC is not a party to this appeal. *See also* CR at 270.
[7] CR at 146.
[8] *Id*. (citing 47 Tex. Reg. 7616 Emergency Rule 65.82(I) (adopted by Tex. Parks & Wild. on November 4, 2022).

the surveillance zone. 31 Tex. Admin. Code §§ 65.82(2); 65.85; 65.88. These movement restrictions remain in place until the disease risk at a facility is mitigated. *See* 49 Tex. Reg. 2394 (proposed rule to eliminate certain surveillance zones where CWD has been mitigated in associated CWD-positive deer breeding facilities). On March 18, 2024, under the threat of further spread of the CWD outbreak, Parks notified Appellant of its decision to exercise its statutory authority to depopulate the deer at his facilities "to mitigate the threat of CWD transmission to surrounding deer populations."[9] This lawsuit followed.

### III. Procedural Background

Appellant filed the underlying lawsuit on April 19, 2024[10], obtaining an *ex parte* temporary restraining order the same day[11]. Parks filed an amended plea to the jurisdiction on May 30, 2024[12]. The night before the hearing, scheduled by agreement for June 7, 2024[13], Appellants filed an amended petition[14]. After hearing argument, the trial court allowed all parties to file supplemental briefing regarding jurisdiction.[15] On June 17, 2024, after considering the amended plea to the jurisdiction, the amended petition, and

---

[9] CR at 183-184.
[10] CR at 6-24.
[11] CR at 25-27.
[12] CR at 144-161.
[13] CR at 137-141.
[14] CR at 162-188.
[15] CR at 209-266.

the parties' supplemental briefing, the trial court granted Parks' plea to the jurisdiction[16].  This interlocutory appeal followed.

Two relevant procedural events have taken place since Appellant filed his opening brief. First, the Texas Supreme Court denied Appellant's motion to re-transfer this matter to the Fourth Court of Appeals on October 23, 2024. Second, Appellant filed a Petition for Writ of Mandamus seeking review of this Court's order lifting a stay of the depopulation order issued for Appellant's ranch and another Motion for Emergency Stay of Parks' depopulation order. The Texas Supreme Court denied both on October 25, 2024.

---

[16] CR at 268-269.

## SUMMARY OF THE ARGUMENT

The deer at the Facility belong to the public. Appellant obtained permission to hold a number of the public's deer in captivity—but not constitutionally protected, vested property rights in these deer—by agreeing to abide by the extensive and unambiguous deer breeding permit restrictions established by the Legislature and enforced by Parks.

Appellant concedes he willingly entered a speculative and highly regulated business. He, like any other deer breeder in Texas, does not and cannot hold a vested property interest in the public's deer. Yet all of Appellant's constitutional claims necessarily rely on his contention that he has vested property rights in the breeder deer at the Facility—vested property rights that do not exist under Texas law.

Appellant's ultra vires claims are likewise unviable as all actions undertaken by Appellees in response to the presence of CWD at the Facility stem from Parks following the Legislature's unambiguous deer breeding regulations and mandate to steward the health of the public's deer as trustee.

Accordingly, there is no legal basis for any of Appellant's claims against Parks, and the trial court properly determined it lacked jurisdiction to prevent Parks from fulfilling its statutory duty to manage the spread of disease among Texas's deer. This Court should join its sister courts and

uphold the State's authority to protect and preserve the public's deer for future generations of Texans.

## STANDARD OF REVIEW

A plea to the jurisdiction is a standard dilatory plea challenging the trial court's subject matter jurisdiction. *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). To overcome a defendant's plea to the jurisdiction, a plaintiff must allege facts affirmatively demonstrating the trial court's jurisdiction. *Id.* at 227; *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

"If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend." *Cockrell Inv. Partners, L.P. v. Middle Pecos Groundwater Conservation Dist.*, 677 S.W.3d 727, 737 (Tex. App.—Dallas 2023, pet. filed Oct. 27, 2023) (quoting *Miranda*, 133 S.W.3d at 226–27). However, "when the plaintiff's pleadings are not capable of being amended in a way that would cure the pleading insufficiency, we are required to dismiss the suit with prejudice." *Id.* (citing *Harris County v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004)).

9

Further, "when the pleadings affirmatively negate the existence of jurisdiction, dismissal is appropriate, and we need not afford an opportunity to amend." *Id*. at 746 (citing *Miranda*, 133 S.W.3d at 226–27); *see also Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 559 (Tex. 2016) (denying opportunity to replead where plaintiff parents "had the opportunity to, and did in fact, amend their pleadings in the trial court after the [school] district filed its plea to the jurisdiction and motion to dismiss").

The Court reviews an order granting a plea to the jurisdiction based on sovereign immunity *de novo. Id*. (citing *Miranda*, 133 S.W.3d at 737). To establish the Court's subject matter jurisdiction in this case, an appellant must affirmatively demonstrate standing and a waiver of the State's immunity. *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003); *Tex. Air Control Bd*., 852 S.W.2d at 446. Appellant bears the burden of pleading and ultimately proving that a waiver of sovereign immunity exists and must definitively establish that the State consented to the suit; otherwise, sovereign immunity bars his claims. *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

## ARGUMENT

### I. The Trial Court Correctly Granted Appellees' Plea to the Jurisdiction Dismissing Appellant's Takings Claims

#### A. Takings claims are expressly limited to vested property rights.

"The 'law of real property is, under [the federal] Constitution, left to the individual States to develop and administer.'" *Severance v. Patterson*, 370 S.W.3d 705, 713 (Tex. 2012). Regarding takings claims, property rights are only protected to the extent they are "established under state law, not as they might have been established or ought to have been established." *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envt'l Prot.*, 560 U.S. 702, 732 (2010). In his live pleading, Appellant asserts takings and/or inverse condemnation claims with regard to the breeder deer at the Facility, as well as his "ranch land, small business, [and] permit rights."[17]

However, to have standing to sue for inverse condemnation, a party must have a vested property interest in the subject property at the time of the alleged taking. *Tex. S. Univ. v. State Street Bank & Trust Co.*, 212 S.W.3d 893, 903 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 808 (Tex. 2005), and *State/Operating Contractors ABS Emissions, Inc. v. Operating Contractors/State*, 985

---

[17] CR at 169-177.

S.W.2d 646, 651 (Tex. App.—Austin 1999, pet. denied)); *see also Cypress Forest P.U.D. v. Kleinwood M.U.D.*, 309 S.W.3d 667, 675 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding trial court erred in denying plea to the jurisdiction in takings case where plaintiff failed to plead a vested property interest). A property right is considered "vested" when it has a definitive, rather than merely potential, existence. *City of La Marque v. Braskey*, 216 S.W.3d 861, 864 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *see also* Black's Law Dictionary (12th ed. 2024) (defining "vested" as "[h]aving become a completed, consummated right for present or future enjoyment; not contingent; unconditional; absolute").

Not just any possessory property right will suffice for a valid constitutional takings claim, that interest must have risen to the level of a vested right. *See Scott v. Alphonso Crutch LSC Charter Sch., Inc.*, 392 S.W.3d 165, 170 (Tex. App.—Austin 2010, pet. denied); *Combs v. City of Webster*, 311 S.W.3d 85, 92 (Tex. App.—Austin 2009, pet. denied) (citing *Spring Branch Indep. Sch. Dist. v. Stamos*, 695 S.W.2d 556, 560–62 (Tex. 1985)).

Appellant's possessory rights to breeder deer, as conveyed under permit from Parks through the unambiguous and extensive deer breeding regulations of the Texas Parks and Wildlife Code, do not give rise to the

existence of a constitutionally protected, vested property interest. These limited rights remain subservient to the State's.

### B. Established precedent examining the unambiguous statutes at issue confirms deer breeders have no vested property right in breeder deer.

No court has interpreted Texas law as providing deer breeders a vested property right in breeder deer. As set forth below, two different Texas courts of appeal, a Texas federal district court, and the Fifth Circuit Court of Appeals have correctly and consistently found deer breeders have no vested property right as to the public's deer they hold and breed in captivity. Under Texas law, there is no distinction granting a special classification to breeder deer. All Texas deer, whether bred in captivity under a permit or not, are "wild" deer. Tex. Parks & Wild. Code § 1.101(4). The deer breeding statutes do not except "breeder deer and increase from breeder deer" from this classification and instead reiterate and reenforce that such deer fall "under the full force of the laws of this state pertaining to deer[.]" *Id.* §§ 43.364, .366. The clear line of precedent confirming Parks' position regarding these unambiguous statutes—that a permit holder does not have a vested property right in breeder deer—is instructive here.

Texas appellate courts have long recognized that a deer breeder's privileges in deer are subordinate to the Legislature's right to change the law

13

and abolish the interest. *See e.g.*, *Bartee*, 894 S.W.2d at 43. The Fourth Court of Appeals acknowledged the clear continuation of common law principals regarding the ownership of wild animals in *Bartee* when it noted that "all the statutory forerunners of section 1.011 [relate back] as far back as 1907." *Id.* at 42 (internal citations omitted). In the thirty years since that decision, the relevant distinction regarding such ownership of wild animals in Texas has not changed.

The Third Court of Appeals more recently reached the same conclusion and explicitly determined that a permit to possess deer does *not* make those deer private property. *Bailey v. Smith*, 581 S.W.3d 374, 392 (Tex. App.—Austin 2019, pet. denied) ("Nothing in subchapter L makes breeder deer property of the deer breeder."). As the court in *Bailey* explained, "allowing private property rights to arise in breeder deer is incompatible with the Legislature's direction that breeder deer are 'held under a permit,'" and "breeder deer held under a deer breeder's permit are subject to all laws and regulations of this state pertaining to deer." *Id.* at 393.

"[B]reeder deer are public property held under a permit issued by [Parks] and, consequently, deer breeders do not acquire common law property rights in them." *Id.* at 393-94 (internal citations omitted). Deer breeders have no vested property interest—and thus, as discussed further

below, no due process expectation either—in breeder deer, which are not common law property. *Id.* at 394.

Likewise, a Fifth Circuit Court of Appeals' panel concluded in an unpublished opinion that due process rights do not attach when Parks depopulates a deer breeding facility. *Anderton*, 605 F. App'x at 348. The breeders in *Anderton* alleged a "protected property interest in the deer herd," but the Fifth Circuit Court of Appeals upheld dismissal, finding that

> Under Texas law, though, breeder deer belong to the state, not the permittee. While a permittee may have possession of the breeder deer, the deer are only "held under a permit." Nowhere do the statutes or regulations state that breeder deer become the property of a permit holder.

*Id.* Accordingly, Parks officials "lawfully entered the Andertons' property and had the right to kill the deer," and because "the Andertons cannot claim a constitutionally protected property interest in the deer herd, their procedural due process claim as to the killing of the deer fails." *Id.* at 345, 348. While Appellant calls attention to the fact that the breeder in *Anderton* had an expired permit,[18] this distinction is without a relevant difference when, ultimately, the "breeder deer belong to the state, not the permittee." *Id.* at 348. Texas law, conforming with long-standing common law and

---

[18] Appellant's Br. at 72.

15

historical principles, simply does not grant—at any time, live permit or not—

a vested property right in breeder deer.

The court in *Anderton* also addressed and set aside the fugitive elk[19]

case on which Appellant relies, for the same reason this Court should.

> The Andertons argue that deer are not wild animals and therefore not owned by the state, citing *Wiley v. Baker*, 597 S.W.2d 3, 5 (Tex. Civ. App.-Tyler 1980, no writ). Although the court stated a person may have "[u]nqualified property rights in wild animals" when they are "made subjects of man's dominion," it did so in the context of a conversion case between two private parties. *See id.* at 5. The court was not addressing whether a person holding deer pursuant to a deer breeder's permit takes ownership from the state.

*Anderton*, 605 F. App'x at 348 n. 4.

Finally, the U.S. District Court for the Western District of Texas also

recently reaffirmed Parks' lawful authority to depopulate deer at CWD-

positive permitted breeding facilities. *See Crowder v. U.S. Dept of Agric.*,

No. 1:22-CV-479-DAE, 2023 WL 4824931, at *4 (W.D. Tex. July 27, 2023)

(holding that "breeder deer and their offspring remain the property of the

state, not the permit holder," and "[Parks] may destroy deer that pose a

threat to other deer or other species, even if those deer are subject to a deer

---

[19] Elk are not "game animals," within the meaning of the Parks and Wildlife Code. Tex. Parks & Wild. Code § 63.001. Elk are included in the definition of livestock under Texas Agricultural Code § 1.003(3) and have never been subject to a breeder permitting regime like deer.

breeder's permit"). *Crowder*, like the cases preceding it, continues the unbroken chain of support for the proposition that deer breeders obtain no vested property right in breeder deer via permit.

The extensive and unambiguous nature of the deer breeding permit restrictions, consistent with a highly regulated industry, as outlined *supra* 2-4, is clear. Appellant argues that, under the Supreme Court's decision in the recent *Loper Bright* case, the Court should narrow deference given to agencies regarding statutory interpretation.[20] However, agency deference is not relevant here—the regulations at issue are clear and unambiguous, leaving no room for interpretation from Parks as to its statutory mandate.

Permission to hold the public's deer does not confer a vested right in them. Thus, deer breeders have no vested property rights derived from deer breeding permits but merely a license to conduct an otherwise illegal activity. This lack of a vested property right is fatal to each of Appellant's takings claims. The trial court's determination was proper for two reasons—(1) the State has a superior interest in the public's deer and (2) without a vested property right in breeder deer, there can be no taking.

---

[20] Appellant's Br. at 21-22.

## C. Appellant's takings claims are each barred by sovereign immunity.

By choosing to engage in the risk-attendant and disease-susceptible business of deer breeding and by obtaining a permit granting the privilege to hold and breed deer belonging to the people of Texas, Appellant expressly accepted the conditions attendant to that permit. And those conditions specifically contemplate the destruction of deer upon Parks' determination of a threat related to the spread of infectious disease.

Pursuant to established precedent, Appellant—like any other permitted deer breeder in Texas—lacks a vested property interest beyond the limited privileges provided by statute and his breeding permit. *See* Section B above. Again, no court interpreting Texas law has found, *ever*, that Texas deer breeders have rights superior to the State's, or that Parks' depopulation of deer violates any vested property right in breeder deer because such a property right does not exist.

The relevant statues and regulations are not ambiguous on these subjects, and the Texas Constitution's separation-of-powers provision "ensures that discretionary functions delegated to administrative agencies by the legislature are not usurped by the judicial branch." Tex. Const. art. II, § 1. The Legislature expressly authorized depopulation. *See* Tex. Parks & Wild. Code § 12.013(a) (authorizing Parks to take any wildlife in the state for

disease diagnosis or prevention); Tex. Parks & Wild. Code § 43.953(b)(permitting destruction of deer "if the department determines that the deer pose a threat to the health of other deer or other species...").

Thus, the same statutory scheme allowing breeders to hold deer captive contemplates Parks' depopulation of herds as it deems necessary for disease control and prevention. And, despite several legal challenges, the statutory scheme that does not confer vested property rights in breeder deer and authorizes their depopulation remains unchanged.[21]

Appellant distorts a quote from *Bailey* claiming his permit comes with property rights subject to violation by Parks.[22] The language removed, noted in bold, belies his argument:

> **That breeder deer are not common law property does not mean that breeder deer have no legal status or protection under the law.** Our holding does not affect the

---

[21] The Legislature *added* "public safety" as a legitimate purpose for Parks to "possess, take, transport, release, and manage any of the wildlife and fish in this state" under Section 12.013 in 2023. Tex. H.B. 3065, 88th Leg., R.S. (2023). The Legislature also *added*, in a separate bill, exceptions to the general rule that deer breeders must reimburse the State the costs associated with the depopulation of deer at a facility under Section 43.995. Tex. S.B. 1372, 88th Leg., R.S. (2023). These latest additions to the deer depopulation statutory framework demonstrate that the Legislature has very recently considered the statutory scheme called into question by Appellant yet declined to make any changes that might establish a vested property right in breeder deer.

[22] Appellant's Br. at 59-60.

rights conferred by a deer breeder's permit **or whether those rights are enforceable against third persons**.

*Bailey*, 581 S.W.3d at 394 (citing *Bartee*, 894 S.W.3d at 43) (emphasis added, internal citations omitted).[23] Appellant may have superior rights against would-be poachers but not against the State. Any privileges Appellant may gain via his permit are necessarily subordinate to the Legislature's authority to direct Parks to depopulate deer that pose a threat to other deer or species.

The privileges associated with a deer breeder permit are subject to a host of requirements, including Parks' regulations *supra* 2-4. Tex. Parks & Wild. Code § 43.357(b); *see also Bailey,* 581 S.W.3d at 383. Appellant complains about movement regulations, asserting that they deprive him of the use of his deer breeding permit and land.[24] But the Legislature, in enacting the statutes permitting deer breeding, specifically required that all deer breeders abide by movement restrictions—those restrictions, along with Parks' ability to depopulate deer, are part and parcel of the deer breeding permit program. Tex. Parks & Wild. Code §§ 43.357, 43.362, 43.363, 43.365.

---

[23] Among the many citations referenced in support of this holding, the *Bailey* court cites to *In re Wheeler*, 431 B.R. 158, 160 (Bankr. N.D. Tex. 2005)—a case cited as favorable by Appellant—as support that a deer breeder "does not have title to the deer. The deer are considered wild animals, and are property of the people of the State of Texas.").
[24] Appellant's Br. at 60.

Being required to comply with existing statutory conditions under a permit system is not a taking.

Further, Appellant's lengthy discussion of the rule of capture through examination of various law review articles and as applied in theft, conversion, oil and gas, and bankruptcy cases[25] is irrelevant considering the clear and unambiguous statutory framework. Nevertheless, this Court can easily read these cases in harmony with *Bartee*, *Bailey*, and the Texas Parks and Wildlife Code simply by following the title as it would in any other property dispute. The people of Texas own all deer, which are held in trust by the State. Tex. Parks & Wild. Code § 1.011(a); *Bailey,* 581 S.W.3d at 390-91 (discussing public trust doctrine). While the Legislature allows deer to be captured, subject to certain restrictions and conditions set forth in the relevant statutes, the public never forfeits title. Tex. Parks & Wild. Code § 43.061(a) (No person may "capture" a game animal without a permit.).

Thus, a permittee obtains only the privilege of lawfully holding the deer, subject to the extensive regulation. *Id*. §§ 43.357, .364 (All breeder deer "are under the full force of the laws of this state pertaining to deer."). While "acting under permits from the State," a permittee obtains "qualified rights of ownership or possession" in deer that, although subordinate to the statute,

---

[25] *Appellant's Br*. at 64-74.

may be the subject of theft, criminal mischief, or conversion by third parties. *Bartee*, 894 S.W.2d at 43-44 (addressing *Runnels v. State*, 213 S.W.2d 545, 547 (Tex. Crim. App. 1948)). Likewise, the breeder does not obtain title but only a "possessory interest" in the deer and "expectancy interest" in the profits of those deer, which can become bankruptcy estate property. *In re Wheeler*, 431 B.R. 158, 163 (N.D. Tex. 2005). These interests are distinguishable, subordinate to those of the State, and do not constitute vested property rights.

Because Parks' mandate to steward and protect Texas wildlife from infectious disease is statutorily directed, Appellant argues a smattering of constitutionally derived claims to overturn the will of the legislative and executive branches. But his claims are legally unviable, and therefore do not confer a waiver of sovereign immunity and subject matter jurisdiction for the Court to abrogate duly enacted laws and authorized executive agency action. The trial court properly determined it lacked jurisdiction to prevent Parks from fulfilling its statutory duty to manage the spread of disease among Texas's deer and, thus, Appellant's claims were correctly barred under sovereign immunity.

## D. *Tyler* **does not upend the established precedent.**

Appellant argues the state has legislated away his property rights regarding the breeder deer at the Facility.[26] Because Appellant willingly entered a highly regulated industry subject to change by the Legislature, the statutes at issue do not legislate away any property rights. Rather, pursuant to the Texas Parks and Wildlife Code, the consistent line of precedential authority, and historical common law principles, Appellant never had vested property rights to the breeder deer at issue to be divested of via legislation, distinguishing *Tyler*.

In reaching the decision in *Tyler*, the Court identified four factors that must be weighed when considering a vested property interest: (1) state law, (2) "existing rules or understandings about property rights," (3) historical practice, and (4) relevant case law precedent. *Tyler v. Hennepin County*, 598 U.S. 631, 638-45 (2023).

Looking at the first factor, Texas law leaves no room for interpretation—"All wild animals … inside the borders of this state are property of the people of this state." Tex. Parks & Wild. Code § 1.011(a). Further, the Legislature saw fit to remind deer breeders that "breeder deer

---

[26] Appellant's Br. at 67.

held under a deer breeder's permit are subject to all laws and regulations of this state pertaining to deer except as specifically provided in this subchapter" and made no exception providing property rights in breeder deer despite the notably relative ease of creating such a statutory exception. *Id.* § 43.366. Recognizing the U.S. Supreme Court's admonition that while "state law is an important source of property rights, it cannot be the only one[,]" Texas law unequivocally denies deer breeders a vested property right as to breeder deer. *Tyler*, 598 U.S. at 638. Thus, the first factor weighs heavily in favor of Parks.

Regarding the second and third factors—existing rules or understandings about property rights and historical practice—a review of historical common law makes abundantly clear that deer are subject to common ownership. In *Bailey*, the court traced the history of English common law's treatment and classification of wild animals as subject to common ownership from pre-colonial times to more recent codification. *See* 581 S.W.3d at 390-91.

Similarly, the Fourth Court of Appeals in *Bartee* traced such principles back to the 1200s and noted that, in continuing the common law understanding of the common ownership of wild animals, "all the statutory forerunners of section 1.011 [relate back] as far back as 1907." 894 S.W.2d

24

at 42. Conversely, the Court noted in *Tyler* that English common law, dating back to the Magna Carta, provides a "principle that a government may not take more from a taxpayer than she owes[.]"598 U.S. at 639. The Minnesota law at issue in *Tyler* violated historical common law principles and, thus, failed this part of the test.[27] Texas laws regarding common ownership of deer do not and, as such, are readily distinguishable. The second and third factors weigh in favor of Parks as well.

The fourth and final factor concerns review of relevant case law precedent. As detailed above, every court to examine the rights of deer breeders as conveyed under permit from Parks reaches the same conclusion: deer breeders have no vested property interest—and thus no due process expectation either—in breeder deer they hold, which are not common law property. *Bailey*, 581 S.W.3d at 394. Conversely, *Tyler* presented relevant contradictions with applicable precedent and Minnesota law generally.[28] The

---

[27] *Tyler* concerns a Minnesota state law that allowed the county to seize property for unpaid property taxes then sell the property and keep all proceeds, including the amount above and beyond the taxes owed. Hennepin County "sold Geraldine Tyler's home for $40,000 to satisfy a $15,000 tax bill [and i]nstead of returning the remaining $25,000, the County kept it for itself." 598 U.S. at 634. Such a law fails a fundamental and common-sense test of fairness that is simply not comparable to the facts here. Further, applying *Tyler* presupposes Appellant has a valid takings claim related to a vested property right, which he does not.
[28] *See Tyler*, 598 U.S. at 645 ("Minnesota law itself recognizes that in other contexts a property owner is entitled to the surplus in excess of her debt.... In collecting all other taxes, Minnesota protects the taxpayer's right to surplus.").

same cannot be said here. Thus, the fourth *Tyler* factor weighs heavily in favor of Parks' position.

Ultimately, Appellant cannot satisfy the *Tyler* test, and his inability to demonstrate a vested property right in the breeder deer he is authorized to possess by his permit is fatal to his various takings claims. Appellant argues his case is an exception to the statutes, caselaw, and historical precedent that weigh against him. But Appellant's argument in this regard is more appropriately framed as an attempt to manufacture a new vested property right in breeder deer that does not and has never existed under Texas law. This Court should reject that request.

### E. Appellant's arguments regarding "investment-backed expectations" were not pled nor do they overcome the state's legitimate interest in the health of the public's deer as to constitute a regulatory taking.

Appellant—via his lengthy discussion and recitation of case law on land use[29], "investment-backed expectations"[30], and "just compensation"[31]— urges Parks' actions constitute a regulatory taking. Setting aside Appellant's lack of a vested property interest in his breeder deer, which Appellees maintain is fatal to each of his various constitutional takings claims, these

---

[29] *See generally* CR at 51-55.
[30] *See generally* CR at 55-59; this phrase does not appear in Appellant's live petition.
[31] CR at 61.

arguments do not save his takings claims because Parks' management of disease among Texas wildlife serves a legitimate state purpose that, on its face, far outweighs any economic implications as to a single deer breeder. Moreover, these claims fail because they were not pled.

Appellant's live petition seeks "legal and equitable" relief through a temporary restraining order and temporary injunction "enjoin[ing Parks] from executing any [depopulation] order or depopulation on [his] property[.]"[32] Even construing his live pleading in the most favorable light demonstrates that presentation of any compensatory takings claim is speculative at best.

Nonetheless, in discussing what constitutes a regulatory taking, Appellant cites to *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)) for a recitation of the three factors to be analyzed.[33] Texas courts have embraced the *Penn Central* factors[34] and noted they are not exhaustive.[35] Exercise of a legitimate government interest, however, can negate private economic concerns. *See e.g., City of Houston v. Trail*

---

[32] CR at 178

[33] Appellant's Br. at 51.

[34] *See e.g., City of Houston v. Trail Enterprises, Inc.*, 377 S.W.3d 873, 884 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (noting factors as (1) "nature of the government action"; (2) "investment-backed expectations from the property owners" and (3) the "economic impact of the regulation on the property owner").

[35] *Sheffield Dev. Co. v. City of Glenn Heights*, 140 S.W.3d 660, 672 (Tex. 2004).

*Enterprises, Inc.*, 377 S.W.3d 873, 884-85 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (citing several cases where government action impacting economic rights was not a taking when advanced for a legitimate public interest). Further, knowledge of existing regulations "is to be considered in determining whether the regulation interferes with investment-backed expectations." *FLCT, Ltd. v. City of Frisco*, 493 S.W.3d 238, 273 (Tex. App.—Fort Worth 2016, pet. denied).[36]

This Court must liberally construe Appellant's allegations as to the alleged economic implications that would result from depopulation—to the extent that argument has not been waived. But Appellant offers little relevant comment on what must be the decisive factor here: the substantial and legitimate state interest Texas has in protecting and preserving the state's deer—the public's deer—from the spread of deadly, infectious disease.

The Thirteenth Court of Appeals addressed the "economic regulation" challenge in the context of animal depopulation when evaluating regulations allowing the TAHC to depopulate diseased cattle, which, unlike breeder deer,

---

[36] According to Appellant's source—J.D. Kirby, Private Property Rights in Captive Breeder Deer: How Wild Are They, 53 TEX. TECH. L. REV. 343 (2021)—the threat to deer breeders from CWD has been known since at least 2015, thus undercutting claims of reasonable investment expectations. Moreover, Appellant claims to have held a deer breeding license for 23 years. CR 15. The first deer breeding regulations were adopted in by the 69th Leg. in 1985, with the Deer Disposition Protocols (sections 43.951-55) added by the 83rd Leg. in 2013.

28

are unquestionably owned by their rancher—not the public. There the Thirteenth Court of Appeals found:

> An economic regulation must only have some rational relationship to a legitimate state interest. The testing and slaughtering of cattle exposed to Brucellosis bears a rational relationship to prevention and the spread of the disease. Bolling argues more accurate testing is available to detect cattle actually infected with Brucellosis. The mere fact that a certain regulation is not the best possible regulation, or that the regulation can be improved, is not justification for a court to invalidate the regulation. Courts should not sit as "super legislatures," reviewing the wisdom of legislative measures that come before it.

*Bolling v. Tex. Animal Health Comm'n*, 718 S.W.2d 819, 820-21 (Tex. App.—Corpus Christi 1987, writ ref'd n.r.e.) (internal citations omitted). The Thirteenth Court held that TAHC's actions were not "an unconstitutional taking" but rather "a valid exercise of the State's police power." *Id.* at 821 (internal punctuation and citations omitted). If the state has a legitimate interest in preventing the spread of disease among livestock it does not own, it certainly stands to reason that it has a legitimate interest in undertaking the same management in stewarding its own property for the benefit of the public and Texas wildlife writ large. And this legitimate state interest must outweigh the alleged economic concerns of a single deer breeder.

Moreover, in an effort to raise a question regarding the legitimate state interest for the relevant CWD-mitigation regulations, Appellant cites to a case from a Mississippi federal district court for the proposition that

depopulation is "inconsistent with current CWD science" and "inconsistent with established [government] policy."[37] But this misquotes the Mississippi district court judge, who acknowledged that whole-herd depopulation can be an appropriate, scientifically viable option and is the only way to eliminate CWD with certainty:

> This finding should not be used to suggest that whole-herd depopulation is not an appropriate or scientifically viable option for CWD-exposed captive deer facilities in Mississippi or elsewhere. Whole-herd depopulation is appropriate in certain cases, and is the only way to be 100% sure that CWD is not present in a captive facility. However, given this specific set of facts, especially the fact that the facility has already been quarantined for six years, and the Defendants' swift action to notify the appropriate authorities, whole-herd depopulation is not presently appropriate for Turkey Trot.

*United States v. Donaldson*, 334 F. Supp. 3d 820, 828–29 (S.D. Miss. 2018). Regardless, nothing in *Donaldson*—which has no binding relation to Texas law or its deer breeding regulations—stands for the proposition that Texas (or Mississippi for that matter) does not have a legitimate state interest in controlling the spread of contagious disease among its wildlife.[38]

The Legislature, through enactment of the comprehensive statutory framework governing deer breeding, has made clear the legitimacy in the

---

[37] Appellant's Br. at 79.
[38] *Id.* at 830-31 ("The Court cannot allow a private entity to usurp the [Mississippi Department of Wildlife, Fisheries and Parks]'s statutorily assigned position as the tip of the spear in the fight against CWD. The MDWFP has an established plan for managing CWD in Mississippi, a plan that has proven effective in Issaquena County. The MDWFP

State's interest in preserving the health of its deer population for the benefit of future generations of Texans. It also set forth clear guidelines for doing so, which include the authorization of depopulation. Stemming the spread of an infectious, deadly disease must come before the economic concerns, no matter their size, of a single deer breeding operation. Sympathy for a commercial deer breeder, no matter how deserved, cannot outweigh the Legislature's clear and unambiguous mandate for Parks to manage and steward the total population of Texas deer.

### F. Appellant's takings claims are not ripe where there has been no actual taking pled.

Setting aside again Appellant's clear lack of a vested property interest in his breeder deer, which is fatal to each of Appellant's various constitutional takings claims, the Texas Supreme Court has rejected takings claims that will occur in the future because it is "entirely speculative" to assume that the government will not compensate a taking that has not yet occurred. *Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 630-31 (Tex. 1996). "If an individual landowner's property is taken and no compensation is provided, that landowner may then

---

is accountable to the citizens of Mississippi and a private company is not. The MDWFP's interests are the interests of the citizens and the State as a whole and a private company's interests are in its margins.")

31

bring a challenge to the Act as it is applied or pursue other possible remedies." *Id.* (emphasis added). "It will be the landowner's burden to establish a vested property right in the [property taken]. The landowner will also have to prove damages and the failure to receive adequate compensation from the State." *Id.*; *see also United States v. Dickinson*, 331 U.S. 745, 749-50 (1947) (holding takings claim had not accrued when landowners were notified that a dam would flood their property but when lands were actually flooded).

Nothing has been "taken" from Appellant at this time. Some percentage of his diseased herd of breeder deer are still alive. The exclusive remedy for a taking is compensation, *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 390-91 (Tex. 2011), which Appellant has not requested in his live petition. Accordingly, if this Court sees fit to judicially author new vested property rights in breeder deer and determines Appellant holds a vested, legally protected property interest that will actually be taken from him following the future depopulation of the CWD-infected Facility, he may pursue a takings claim for compensation at that time. *See, e.g., RecordBuck Inc. et al v. Schwartz et al*, C.A. No. 2:17-CV-00068 (W.D. Tex. 2017) (Nov. 22, 2017 order) (refusing to grant a temporary restraining order stopping Parks' depopulation of CWD-positive facility because there was no likelihood

of irreparable harm given that monetary damages would adequately compensate for the loss of breeder deer).

## II. The Trial Court Correctly Granted Appellees' Plea to the Jurisdiction Dismissing Appellant's Due Process Claims

### A. Without a vested property right in breeder deer, Appellant's due process claims are not viable.

Under the Texas Constitution's due course of law[39] provision, which Texas courts interpret as generally aligned with the federal Constitution's due process provision,[40] Appellant arguably challenges the Parks Defendants' actions under the Texas Parks and Wildlife Code.[41] Regardless, "[a] due process claim is not viable, and thus barred by sovereign immunity, if the party lacks a vested property or liberty interest on which to base its due process claim." *Honors Acad., Inc. v. Tex. Educ. Agency,* 555 S.W.3d 54, 67-68 (Tex. 2018).

> For due-process and due-course purposes, such an interest is properly characterized as a form of "property" interest. But to be constitutionally protected, a property interest must be "vested." When an interest "is predicated upon the anticipated continuance" of an existing law and is "subordinate to" the

---

[39] *See Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995) (no meaningful distinction exists between the terms "due process" and "due course of law").

[40] *See, e.g., City of Richardson v. Bowman*, 555 S.W.3d 670, 691 (Tex. App.—Dallas 2018, pet. denied).

[41] Appellant refers to challenging the constitutionality of a statute (CR 163) but does not appear to include any explicit claims.

> legislature's right to change the law and "abolish" the interest, the interest is not vested.

*Tex. Dept of State Health Servs. v. Crown Distrib. LLC*, 647 S.W.3d 648, 655 (Tex. 2022) (citations omitted); s*ee also Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 15 (Tex. 2015) (holding "due-course claims are facially invalid" where "Petitioners have no vested property right … at issue.")

Without a vested property interest in breeder deer, Appellant's due process claim here is likewise unviable and barred by sovereign immunity. *See Combs v. City of Webster*, 311 S.W.3d 85, 92 (Tex. App.—Austin 2009, pet. denied) (constitutional claims require the existence of a vested property right); *see also City of Houston v. Northwood Mun. Util. Dist. No. 1*, 73 S.W.3d 304, 311 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (addressing same requirement of a vested property right for takings claims). Where "the pleadings affirmatively negate a required element of a constitutional claim against the State, grant of the State's plea to the

jurisdiction as to that claim is proper." *See id.* (citing *State v. Holland*, 221 S.W.3d 639, 643–44 (Tex. 2007)).

As relevant here, the Fourth Court of Appeals previously found that a deer breeder's privileges in deer are subordinate to the Legislature's right to change the law and abolish the interest.

> The State, through [Parks], represents the common ownership of wild animals. The people have the right to change this arrangement if they so desire. The State, as trustee, has the power to regulate the taking and acquisition of property in wild animals by individuals by imposing such restrictions and conditions as the legislature may see fit.

*Bartee*, 894 S.W.2d 34 at 43 .

The Third Court of Appeals reached the same conclusion in its exhaustive opinion in *Bailey*, 581 S.W.3d 374. In *Bailey*, the deer breeders also alleged due process violations. *See id.* at 384, 388-389, 397 (deer breeders "various due process claims all depend[] on the existence of a property interest entitled to constitutional protection" (internal citation omitted)). As discussed in detail above, the Third Court of Appeals affirmed that deer are public property owned by Texans and held under a permit conferring no vested property interest. *Id.* at 394. But the Third Court of Appeals also determined in *Bailey* that permittees had no due process

expectation in breeder deer which, consistent with long-standing common law and statutory codifications, are not private property. *Id.* at 392-94.

Moreover, contrary to Appellant's live pleading,[42] the Legislature gave Parks authority to make its CWD threat determination but did not direct Parks to hold a hearing before doing so. "Although the [Administrative Procedure Act] defines 'contested case' and sets the procedural framework, the agency's enabling act here sets out whether rights are to be determined after an opportunity for adjudicative hearing, and agency rules may decide whether that opportunity may include a contested case hearing." *Tex. Comm'n on Envt'l Quality v. City of Waco*, 413 S.W.3d 409, 423 (Tex. 2013).

Likewise, the statute does not require Parks to "prove" the threat in the courts as Appellant would apparently prefer. *Id.*; *Am. Campus Communities, Inc. v. Berry*, 667 S.W.3d 277, 286-287 (Tex. 2023) ("The Legislature's creation of this legal right, however, does not automatically authorize a suit to vindicate the right."). Imposing that extra-statutory requirement on Parks violates principles of separation of powers because the "very balance of state governmental power imposed by the framers of the Texas Constitution depends on each branch, and particularly the judiciary, operating within its jurisdictional bounds." *Brown v. De La Cruz*, 156 S.W.3d

---

[42] *See generally* CR at 167-173.

560, 569 (Tex. 2004) (citing *State v. Morales*, 869 S.W.2d 941, 949 (Tex.1994)) (holding that "[b]y implying a private cause of action in a statute that did not provide for one, the court of appeals exceeded those bounds.").

A vested property right is essential to a constitutional due process claim. But there are no "vested property rights" when, as here, "the Legislature may diminish or eliminate" such right "at any time." *McGarry v. Hous. Firefighters' Relief & Ret. Fund*, 680 S.W.3d 14, 29 (Tex. App.—Houston [1st Dist.] 2023, pet. denied) (internal citation omitted). Appellant does not have vested property rights in the breeder deer at his Facility and, moreover, Parks was under no obligation to provide the hearing to which Appellant believes he is entitled. Accordingly, his due process claim fails.

## B. Appellant's economic liberty and legitimate state interest arguments fail to save his unviable due process claims.

In asserting his right to pursue deer breeding "is an economic liberty interest" under *Patel v. Tex. Dept. of Licensing & Regulation*, 469 S.W.3d 69, 75 (Tex. 2015). Appellant ignores that the Texas Supreme Court has since found that "occupational interests [that] exist only because the government has created them or made them available," which includes the otherwise criminal possession of deer, cannot support such a challenge. *Crown Distrib.*, 647 S.W.3d at 655 (distinguishing *Patel*); *see id.* at 653 n.16 (noting

that the court in *Patel* assumed, but did not decide, that the plaintiffs had a protected interest). Moreover, unlike the regulations in *Patel*, section 43.953 is not a standalone economic regulation adopted by the State under its police power interfering with an otherwise lawful business. It is separately a creature of Parks' power as trustee of the public's ownership of deer, which allows permittees to participate in an otherwise illegal activity.

The State, as trustee of the public's wildlife, has the power to regulate the taking and possession of wild animals by individuals by imposing restrictions and conditions as the Legislature sees fit. Wholly apart from its authority to protect the common ownership of wild animals, the right of the State to preserve wild animals cannot be disputed due to the undoubted existence of a police power to that end. *Bartee*, 894 S.W. at 43. The Parks and Wildlife Code provides the terms upon which the State, through Parks, allows the public's deer to be held.

"To establish that an economic regulation is unconstitutional for violating this protection, a party must show either that the law's 'purpose could not arguably be rationally related to a legitimate governmental interest' or that 'when considered as a whole, the [law's] actual, real-world effect as applied to the challenging party could not arguably be rationally related to, or is so burdensome as to be oppressive in light of, the

38

governmental interest.'" *Bailey*, 581 S.W.3d at 395 (quoting *Patel*, 469 S.W.3d at 87. As discussed above in addressing Appellant's allegedly raised economic and "investment-backed expectations" arguments, *supra* section I.E., there is a substantial and legitimate state interest in the health of the Texas deer population that clearly outweighs the economic interests of individual deer breeders. Parks has a mandate from the Legislature to protect this legitimate state interest.

There is no due process expectation for breeder deer, which have "no legal status or protection under [Texas] law." *Id.* at 394. Without a vested right to stand on and with Parks under no obligation to provide the hearing to which he feels entitled, Appellant's constitutional claims in this regard are unviable and were correctly dismissed by the trial court in granting the Parks' jurisdictional plea. Moreover, Appellant's misguided economic-expectations and unsupported legitimate-state-interest challenges fall flat considering the unambiguous regulations enacted by the Legislature to support the legitimate state interest in protecting its property from the spread of infectious, deadly diseases.

### III. The Trial Court Correctly Granted Appellees' Plea to the Jurisdiction Dismissing Appellant's Ultra Vires Claims

Parks' proposed depopulation of Appellant's CWD-infected facility is expressly authorized by statute. Tex. Parks & Wild. Code § 43.954. The

statute provides two prerequisites to Parks' depopulation of breeder deer covered by a permit:

> (1) Parks' determination that the deer at the facility pose a threat to other deer and other susceptible species, Tex. Parks & Wild. Code § 43.953, and

> (2) 10 days' notice to the breeder along with an explanation of any access restrictions and the reasons for destruction including the results of any epidemiological investigation that was conducted, *id.* § 43.954.

As evident from the record, Parks determined that the deer at the facility pose a threat to other deer and other susceptible species and provided the required notice to Appellant: "[Parks] has determined that depopulation of your breeding facilities 9133B and 21119B are necessary to mitigate the threat of CWD transmission to surrounding deer populations."[43]

Under a very generous interpretation, Appellant can generally be construed as averring in his live pleading that Director Silovsky personally exceeded his authority in signing off on depopulation, but he fails to identify any specifically unauthorized action on his part.[44] Thus, Appellant falls short

---

[43] CR at 183-184

[44] Plaintiff's live pleading generally lumps the actions of the Parks Defendants together as simply, "Defendants." *See e.g.,* CR at 163 ("Defendants' conduct constitutes a constitutional violation of due process rights … The actions of the Defendants amounts to a taking"); 164 ("Defendants' conduct … constitutes a violation of the reasonable search and seizure requirement under the Fourth Amendment"; 176 ("Defendants' conduct was affirmative and intentional"). Of note, the phrase "ultra vires" does not appear. In fact, the only mention of actions taken by Director Silovsky is to highlight that the director signed the depopulation order (CR at 169; 172).

of the requirement to "allege facts affirmatively demonstrating actionable ultra vires conduct by state officials in order to avoid dismissal on jurisdictional grounds due to sovereign immunity." *Matzen v. McLane*, 659 S.W.3d 381, 388 (Tex. 2021) (collecting cases); *see also Klumb*, 458 S.W.3d at 17 (dismissing suit because plaintiffs failed to plead actionable ultra vires conduct)). This burden falls on Appellant, and it has not been met. *Id.* at 389.

Further, because Parks (including Director Silovsky) complied with the statute as written, Appellant's cursory ultra vires claim must be dismissed. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009) (to establish the "ultra vires exception" to sovereign immunity, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act."); *see also Patel*, 469 S.W.3d at 77 (when plaintiffs "challenge the validity of [] statutes and regulations, rather than complaining that officials illegally acted or failed to act, the ultra vires exception does not apply").

The ultra vires inquiry is straightforward: Did the governmental officer "act without legal authority?" Addressing both *Heinrich* and *Hous. Belt & Terminal Railway Co. v. City of Houston,* 487 S.W.3d 154, 168-169 (Tex. 2016), the Texas Supreme Court explained how to answer this question.

> A government officer with some discretion to interpret and apply a law may nonetheless act "without legal authority," and thus ultra vires, if he exceeds the bounds of his granted authority or if his acts conflict with the law itself. If the challenged actions "were not truly outside the officer's authority or in conflict with the law," then the plaintiff has not stated a valid ultra vires claim and governmental immunity will bar the suit.

*Schroeder v. Escalera Ranch Owners' Association, Inc.*, 646 S.W.3d 329, 332–33 (Tex. 2022) (cleaned up).

Here, the statute authorizes depopulation "**if the department determines** that the deer pose a threat to the health of other deer or other species, including humans." Tex. Parks & Wild. Code §§ 12.013(a); 43.953(b) (emphasis added). As provided in Appellant's live petition, the department made that determination.[45] That Appellant, placed in the shoes of Director Silovsky, might not have made the same determination or signed the depopulation order, is irrelevant. Appellant contends that Parks was wrong to determine that the deer in his infected Facility are a threat to other deer and wishes to seek review of that determination using the ultra vires exception. But as the Texas Supreme Court decided in *Schroeder*, the Court should not indulge his desire to litigate the bases of Parks' determination when the Legislature has committed that determination to Parks.

> The Legislature has not created a mechanism for third parties to seek judicial review of a municipality's platting approval.

---

[45] CR at 183-184.

42

> Providing one against the Commissioners in this case would undercut both our well-established limitations on ultra vires suits and the Legislature's plain preference for speedy platting decisions.

*Schroeder*, 646 S.W.3d at 336.

Parks adhered to the only constraint on its discretion provided in the Parks and Wildlife Code: that it must consider the results of any epidemiological assessment conducted. Tex. Parks & Wild. Code § 43.953(a)(2). Parks provided Appellant the result of the assessment it considered in Parks' notice of deer disposition protocol.[46]

Finally, regarding Appellant's complaints concerning Parks restricting access during the depopulation[47] (which has not occurred), such considerations were already considered—and rejected—by the Legislature in adopting section 43.954(b)(2). This section specifically contemplates "access restrictions imposed on the facility or acreage covered by the permit during the destruction of the deer," and actively requires Parks to explain those access restrictions to the deer breeder before depopulation. Appellant's complaint lies with the statute itself. Director Silovsky's actions did not defy

---

[46] CR at 183-184.

[47] It is unclear whether complaints of this type were raised in Appellant's live petition, but CR at 168 comes closest ("will not even allow [Appellant] to be present on his own property during" depopulation).

his legal authority or use state resources in violation of the law, but rather directly and strictly adhered to it.

Put simply, Parks needs to perform its duties assigned by the Legislature for the benefit of present and future Texans: "An employee of the department acting within the scope of the employee's authority may . . . take . . . any of the wildlife and fish in this state for . . . disease diagnosis or prevention. . . ." Tex. Parks & Wild. Code § 12.013(a).

While Appellant clearly takes issue with how this determination was made, Parks undeniably made a determination—through the appropriate regulatory means—that the deer in his facility pose a threat to Texas's deer and/or other cervid species. The actions taken by Director Silovsky support the mandate given by the Legislature to Parks to steward and protect Texas wildlife. As such, Appellant's complaints lie with the statute itself rather than any allegedly ultra vires action taken by Parks or Director Silovsky.

***

As evident throughout this appeal, Appellant seeks special treatment separate and apart from the terms of the permit he willingly accepted based on the allegedly superior care he provides to the deer at his Facility. But, as the record demonstrates, award-winning deer are not immune to CWD.  No

44

one deer breeder's interests are superior to the State's and its need to protect and preserve Texas wildlife for future generations.

## CONCLUSION AND PRAYER

For the foregoing reasons, Appellees respectfully request that this Court AFFIRM the trial court's granting of its Plea to the Jurisdiction dismissing all of Appellant's claims in full for lack of subject matter jurisdiction, and for any other relief to which they are entitled.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

KELLIE E. BILLINGS-RAY
Chief, Environmental Protection Division

*/s/ Ian Lancaster*
IAN LANCASTER
Assistant Attorney General
State Bar No. 24097964
ian.lancaster@oag.texas.gov

45

H. CARL MYERS
Deputy Chief
State Bar No. 24046502
carl.myers@oag.texas.gov

HEATHER COFFEE
Assistant Attorney General
State Bar No. 24138102
heather.coffee@oag.texas.gov

OFFICE OF THE ATTORNEY GENERAL
Environmental Protection Division
P. O. Box 12548, MC-066
Austin, Texas 78711-2548
Tel: (512) 463-2012 | Fax: (512) 463-0911

COUNSEL FOR APPELLEES

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, I certify that this brief contains 9,800 words, as calculated by Microsoft Word, the computer program used to create this document.

*/s/ Ian Lancaster*
IAN LANCASTER
Assistant Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of January 2025, a true and correct copy of the foregoing has been served upon the parties listed below via electronic service or email.

Kimberly S. Keller
KELLER STOLARCZYK PLLC
215 W. Bandera Road
No. 114-PMB 800
Boerne, Texas 78006
Tel: 830.981.5000
Email: kim@kellsto.com

C. Dixon Mosty
Richard C. Mosty
MOSTY LAW FIRM
222 Sidney Baker St., Ste. 400
Kerrville, Texas 78028
Tel: 830.792.7711
Email: cdmosty@mostylaw.com
Email: rmosty@mostlylaw.com

Clayton C. Utkov
ANDREWS MYERS, P.C.
919 Congress Ave., Suite 1050
Austin, Texas 78701
Tel: 512.900.3012
Email:
cutkov@andrewsmyers.com

COUNSEL FOR APPELLANT

Jennifer S. Riggs
RIGGS & RAY, P.C.
3307 Northland Dr.
Austin, Texas 78731
Tel: 512.457.9806
Email: jriggs@r-alaw.com

COUNSEL FOR APPELLANT

Karen L. Watkins
Assistant Attorney General
Administrative Law Division
Office of the Attorney General
P.O. Box 12548, MC-018
Austin, Texas 78711
Tel: 512.475.4300
Email:
karen.watkins@oag.texas.gov

COUNSEL FOR TEXAS
ANIMAL HEALTH
COMMISSION

Paul W. Green
Kevin Dubose
ALEXANDER DUBOSE &
JEFFERSON LLP
Union Square II
10001 Reunion Place, Suite
640A
San Antonio, Texas 78216
Tel: 210.202.3105
Email: pgreen@adjtlaw.com

Kevin Dubose
ALEXANDER DUBOSE &
JEFFERSON LLP
1844 Harvard St.
Houston, Texas 77008
Tel: 713.523.0667
Email: kdubose@adjtlaw.com

James T. Drakeley
SPENCER FANE LLP
5700 Granite Parkway, Suite 650
Plano, Texas 75024
Tel: 972.324.0350
Email: jdrakeley@spencerfane.com


COUNSEL FOR AMICUS CURIAE
MAURICE E. "PETE" MOORE, III,
D/B/A CYPRESS RANCH

 */s/ Ian Lancaster*
IAN LANCASTER
Assistant Attorney General

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

James McCarley on behalf of Ian Lancaster
Bar No. 24097964
scott.mccarley@oag.texas.gov
Envelope ID: 95964983
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: Appellees' Brief
Status as of 1/8/2025 7:07 AM CST

Associated Case Party: State Of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Kellie E.Billings-Ray | | Kellie.Billings-Ray@oag.texas.gov | 1/7/2025 7:51:34 PM | SENT |
| Ian Lancaster | | ian.lancaster@oag.texas.gov | 1/7/2025 7:51:34 PM | SENT |
| Laura Courtney | | laura.courtney@oag.texas.gov | 1/7/2025 7:51:34 PM | SENT |
| H. CarlMyers | | Carl.Myers@oag.texas.gov | 1/7/2025 7:51:34 PM | SENT |
| Heather Coffee | | heather.coffee@oag.texas.gov | 1/7/2025 7:51:34 PM | SENT |
| James ScottMcCarley | | scott.mccarley@oag.texas.gov | 1/7/2025 7:51:34 PM | SENT |

Associated Case Party: Maurice E. "Pete" Moore, III, d/b/a Cypress Ranches

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Kevin Dubose | | kdubose@adjtlaw.com | 1/7/2025 7:51:34 PM | SENT |
| James  T.Drakeley | | jdrakeley@spencerfane.com | 1/7/2025 7:51:34 PM | SENT |
| Latonya McPherson | | lmcpherson@adjtlaw.com | 1/7/2025 7:51:34 PM | SENT |
| Paul W.Green | | pgreen@adjtlaw.com | 1/7/2025 7:51:34 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Karen LWatkins | | karen.watkins@oag.texas.gov | 1/7/2025 7:51:34 PM | SENT |
| C DixonMosty | | cdmosty@mostylaw.com | 1/7/2025 7:51:34 PM | SENT |
| Richard Mosty | | rmosty@mostylaw.com | 1/7/2025 7:51:34 PM | SENT |
| Jennifer SRiggs | | jriggs@r-alaw.com | 1/7/2025 7:51:34 PM | SENT |
| Kimberly SKeller | | kim@kellsto.com | 1/7/2025 7:51:34 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

James McCarley on behalf of Ian Lancaster
Bar No. 24097964
scott.mccarley@oag.texas.gov
Envelope ID: 95964983
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: Appellees' Brief
Status as of 1/8/2025 7:07 AM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Kimberly SKeller | | kim@kellsto.com | 1/7/2025 7:51:34 PM | SENT |
| Clayton CUtkov | | cutkov@andrewsmyers.com | 1/7/2025 7:51:34 PM | SENT |